IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NANCY MILLER, | * | 2006 OCT 16 P 7:24 |
| | * | |
| PLAINTIFF, | * | |
| | * | |
| | * | |
| v. | * | Case No. 1:06-cv-940-WKW |
| | * | |
| | * | |
| | * | |
| HOUSTON COUNTY BOARD OF | * | JURY DEMANDED |
| EDUCATION; | * | |
| KENNTH LORD; | * | |
| RILEY JOE ANDREWS; | * | |
| TIM PITCHFORD; | * | |
| PAUL STRANGE; | * | |
| STACY EZELL; | * | |
| TROY UNIVERSITY, DOTHAN; | * | |
| SANDRA JONES; | * | |
| PAM PARRIS; | * | |
| and | * | |
| GREG RUEDIGER, | * | |
| | * | |
| DEFENDANTS. | * | |

## COMPLAINT

### JURISDICTION AND VENUE

1. This Court has jurisdiction of the subject matter of this claim under the provisions of 28 U.S.C. §1331, because this action arises under an Act of Congress relating to damages arising from a deprivation of Plaintiff's right to free speech under the United States Constitution; specifically, 42 U.S.C. §1983, and the First and Fourteenth Amendments to the U.S. Constitutions.

2. Venue is proper in this Court under 28 U.S.C. §1391, in that all parties reside in the Southern Division of the Middle District of Alabama, and the tort sued upon occurred in said Division.

## STATEMENT OF THE PARTIES

3. Plaintiff Nancy Miller is an adult resident citizen of Houston County, Alabama.

4. Defendant Houston County Board of Education is a governmental entity duly organized and existing under the laws of the State of Alabama.

5. Defendant Kenneth Lord is an adult, resident citizen of Houston County, Alabama. At the time of the events complained herein, Mr. Lord was Superintendent of Education of the Houston County Board of Education. He is now retired.

6. Defendant Riley Joe Andrews is an adult, resident citizen of Houston County, Alabama. At the time of the events complained herein, Mr. Andrews served as Federal Programs Coordinator for the Houston County Board of Education. He is now retired.

7. Defendant Tim Pitchford is an adult, resident citizen of Houston County, Alabama. Mr. Pitchford is now Superintendent of Education for Houston County Board of Education, but at the time of the events complained of herein, he served as Principal at Houston County High School in Columbia, Alabama.

8. Defendant Paul Strange is an adult, resident citizen of Houston County, Alabama. At the time of the events complained herein, he was employed as a teacher, assigned to mentor the Plaintiff at Houston County High School in Columbia, Alabama.

9. Defendant Stacy Ezell is an adult, resident citizen of Houston County, Alabama. At the time of the events complained herein, she was employed as a teacher at Houston County High School in Columbia, Alabama

10. Defendant Troy University, Dothan is a legal entity, believed to be created by charter by the State of Alabama, having a principal place of business in Dale or Houston County, Alabama.

11. Defendant Sandra Jones is an adult, resident citizen of the Southern Division of the Middle District of Alabama. At the time of the events complained herein, she served as Dean of the Troy State University, Dothan, College of Education.

12. Defendant Pam Parris is an adult, resident citizen of the Southern Division of the Middle District of Alabama. At the time of the events complained herein, she served as Director of Professional Internship Programs of Troy State University, Dothan.

13. Defendant Greg Ruediger is an adult, resident citizen of the Southern Division of the Middle District of Alabama. At the time of the events complained herein, he served as Troy State University, Dothan's advisor to the Plaintiff in connection with her internship.

## STATEMENT OF THE FACTS

14. At the time of the events made the basis for the action, Plaintiff, Nancy Miller, was a student intern at Troy State University, working as a school teacher under contract with Defendant Houston County Board of Education.

15. Plaintiff started work at Houston County High School in Columbia, Alabama, as a contract teacher under a nine month contract on July 28, 2004, for the 2004-2005 school year, in the field of special education.

16. Plaintiff noticed various acts of malfeasance, misfeasance and nonfeasance in violation of the laws and regulations governing the special education program. When she noticed these violations she immediately reported such to Paul Strange, who was her mentor and supervisor at the school.

17. Plaintiff reported, among other shortcomings, that Individualized Education Program (IEPs) were being either not prepared, wrongly prepared or even fabricated and backdated; that one or more students had not been switched from a resource room to a full inclusion room in

violation of board special education policy; that eight students had not been given Special Education History, although their IEPs called for such; that two science teachers had requested not to have a special education teacher in their classes, although they both had special education children in their classrooms; that at least one special education student with mental retardation had been failed because the teacher declared that the child was "just lazy and didn't do his work," despite such teacher's knowledge from the child's file that the child did not have the cognitive skills for the class; that there were at least two special education students (one of whom was homebound) for whom there were no IEPs prepared; that several students had only temporary services sheets with no current IEPs for the 2004-2005 school year; that one teacher prepared an IEP in front of Plaintiff with no IEP meeting with the student and his parents as required by law; that 57 special education students had no IEPs in their files as of August 2004; that school personnel had been ridiculing special education student's hair styles and appearance; that staff members had been making up IEPs without the customary meetings needed with the students and their parents; and that Plaintiff had been asked to write IEPs for those students who did not have IEPs and then to back date such IEPs so that the school would appear be in compliance with the laws governing special education students, which Plaintiff had refused to do. One of the teachers whose conduct was complained of by Plaintiff was Defendant Ezell.

18. Plaintiff reported the above referenced deficiencies to her mentor, Paul Strange, who told Plaintiff that the illegal IEPs had to be done and that she would have to sign off on them. Plaintiff made substantially similar reports, including a report as to Mr. Strange's reaction to her original report, to Tim Pitchford and Riley Joe Andrews, as well as to Dr. Ruediger, Ms. Parris, and Dr. Sandra Jones.

19. Shortly thereafter Mr. Andrews sent and undated letter to Ms. Parris expressing "concerns" about Plaintiff. Near in time to the Andrews report, Mr. Strange and Ms. Ezell co-authored a report to Parris regarding asserted deficiencies in Plaintiff's performance. Both the Andrews report and the Strange-Ezell report contained falsehoods or placed plaintiff in a derogatory false light, and such reports were calculated to have a pre-text for the withdrawal of Plaintiff's internship.

20. Dr. Greg Ruediger was Plaintiff's internship advisor at Troy State University. Following the advent of Plaintiff's reports, the principal at Columbia High School, Tim Pitchford, contacted Dr. Ruediger's supervisor at Troy State University, Pam Parris, who oversees all interns at the University. Pitchford made his displeasure known to Parris. Parris then removed Dr. Ruediger as supervisor of Plaintiff's internship, and Ruediger was replaced by Mary Brazelle. Dr Ruediger asked to be placed back over Miller's internship and Parris reinstated Dr. Ruediger over Plaintiff's internship. Ruediger then gave Plaintiff a poor rating on her evaluation, and he warned Plaintiff that he would need to "pull" Miller from the internship at Houston County High School, because of all of the things that Miller was reporting and writing about at the school.

21. When the Plaintiff refused to keep quiet about the special education program at Columbia High School, her internship was withdrawn and she was given an incomplete grade for the internship, and, subsequently, she was terminated from her position as a teacher.

22. Plaintiff's first notice of the withdrawal of her internship occurred on October 14, 2004, in a meeting between Plaintiff, her husband, and Parris, who confirmed the withdrawal of Plaintiff's internship by letter to Defendant Lord dated October 18, 2004. On October 20, 2004, Mr. Lord, who had knowledge of the Plaintiff's reports, as well as his staff's reaction

to such reports, had a letter dated October 19 hand delivered to Plaintiff at her school, informing her that, due to the withdrawal of her internship, her teaching contract was also terminated; whereupon, Plaintiff was escorted off campus.

## COUNT I

## VIOLATION OF 1ST AMENDMENT RIGHT TO FREE SPEECH

23. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above. Plaintiff avers that all acts and omissions attributed to the Defendants were done under color of state law, policy, practice or custom; and that, as a practical matter, each individual defendant was the highest repository of authority to take the action attributed to such actor or was so situated that his or her acts or edicts could fairly be construed as constituting official policy. All individuals are sued in their individual capacities.

24. Plaintiff as a citizen of The United States of America had a right under the First and Fourteenth Amendments to the Constitution of the United States to speak out on such, as herebefore alleged.

25. Defendants violated Plaintiff's right to speak freely about such policies and violations of law that she witnessed by either causing her to lose her internship or causing her to lose her job, or both.

26. Defendants took such adverse actions and terminated in order to stifle Plaintiff's willingness and ability to speak honestly about violations of law, and to retaliate against her for having made such reports.

27. Defendants conduct was willful, malicious and oppressive, and as a proximate consequence of such conduct, Plaintiff lost income, had her college education delayed, was damaged in her reputation and suffered emotionally.

### DEMAND FOR JUDGEMENT

**WHEREFORE PLAINTIFF PRAYS** for judgment against Defendants as follows:

A.  An order directing Defendants to reinstate Plaintiff to her position with the Houston County Board of Education, and with all back pay and benefits under the contract the contract signed and dated on July 28, 2004;

B.  Awards of compensatory and punitive damages;

C.  An order directing Defendants to pay Plaintiff's reasonable attorney's fees and costs; and

D.  Such other and further relief as this Court may deem just and appropriate in the circumstances.

WINN FAULK
ASB-3091-L48W
Attorney for Plaintiff

**OF COUNSEL:**
FAULK & REED
524 S. Union Street
Montgomery, Alabama 36104-4626
Phone: 334.834-2000
Fax:    334.834-2088
winnfaulk@bellsouth.net

### JURY DEMAND

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.

**WINN FAULK**
**Attorney for Plaintiff**