# EVIDENTIARY SUBMISSION
# (PART 2)

325

1  Hortberg, and I'm the attorney for Paul
2  Strange and Stacey Ezell. And I have the
3  same ground rules that Mr. Walding went over
4  with you earlier. And you understand that
5  you're still under oath?
6      A  Yes.
7      Q  Okay. I just have some follow-up
8  questions for you about some information that
9  you've already provided earlier today.
10     During your day at Houston County High
11  School, when you were an intern there, was
12  your day split up into the same blocks that
13  the students' day was split up into?
14     A  Yes.
15     Q  So, their first block was also your
16  first block?
17     A  That's correct.
18     Q  And whose class were you in during
19  first block?
20     A  I had planning at that point in
21  time.
22     Q  And how long is a block?
23     A  90 minutes, approximately.
24     Q  And is your 90 minutes of your
25  planning period spent in your resource room?

326

1      A  Not necessarily. Some days, yes.
2  Not others. I had a list of teachers that I
3  needed to cover their special ed students in
4  there. If they had a test, they could come
5  into the -- special ed students could come
6  into my resource room and take the test, or
7  sometimes I'd go visit the teachers to see if
8  they were having a problem or, you know, take
9  something that they might need.
10     Q  Would those be your typical
11  teachers that you would also be going to
12  their rooms later in the day, or these would
13  be different teachers?
14     A  Different teachers.
15     Q  Okay. During the time that you
16  were an intern at Houston County High School,
17  were you covering the 11th and 12th grade
18  special education students?
19     A  If I remember correctly, I had 10th
20  -- 9th, 10th, 11th and 12th grade students on
21  my roll. I actually covered some of the
22  other students that were on the rolls of, if
23  I remember correctly, Mr. Payne and Mr.
24  Strange.
25     Q  But I believe you testified earlier

327

1  you only had between 19 and 22 students on
2  your roll?
3      A  On my roll.
4      Q  Going back to that planning period
5  you had first block. Would that also be one
6  of the times that you would have your
7  meetings with Mr. Strange that you discussed
8  with us earlier?
9      A  Yes. If he was available, yes.
10     Q  Okay. And so, you had that first
11  block available every day on your schedule,
12  as your planning period?
13     A  Correct.
14     Q  So, you and Mr. Strange would just
15  coordinate which of those -- you know, which
16  day during the week you all could meet, and
17  it might be during your first block planning
18  period?
19     A  Correct.
20     Q  And just in coordination with his
21  schedule?
22     A  Correct.
23     Q  Second block, whose class were you
24  in?
25     A  That would have been -- let me

328

1  think -- Ms. Sims' class.
2      Q  English?
3      A  Yes. Or Ms. Ezell's class.
4      Q  Science?
5      A  Correct.
6      Q  Were there particular grade levels
7  in the English class? Was it, like, 9th
8  grade English or composition or --
9      A  Gosh. I don't recall. I'm sorry.
10     Q  What about the science class, Ms.
11  Ezell's second block? Was it a particular
12  grade level?
13     A  Again, I don't recall.
14     Q  Okay. Was there a reason why you
15  weren't specifically designated to be in Ms.
16  Sims' class every day during second block?
17     A  Because there were a number of
18  special ed students in her class as well as
19  Ms. Ezell's class. So, we needed to serve as
20  many as possible. So, that was the way they
21  asked me to take care of my teaching for that
22  second block.
23     Q  Okay. And then, third block, whose
24  classroom were you in?
25     A  Ms. Towns.

329

1    Q    She's math?

2    A    Math. Uh-huh.

3    Q    And she's the class where you had

4    at least one of your evaluations by

5    Dr. Ruediger?

6    A    Dr. Ruediger. Yes, that's correct.

7    Q    And then, fourth block, whose class

8    were you in?

9    A    Ms. Ezell's.

10   Q    Science?

11   A    Yes.

12   Q    Do you remember the grades that

13   were in that class?

14   A    I know one of the students was

15   classified as a senior. I believe the other

16   one might not have been a senior. I'm not

17   really sure.

18   Q    Okay. The math class, was it a

19   particular grade level?

20   A    I don't recall that, either. But

21   the majority, if not all of -- the majority

22   of students, I believe, in that class, were

23   on my roll. And, again, I had 7th, 8th, 9th

24   and 10th. So, I know that's -- the classroom

25   of Ms. Towns was basically all special

330

1    education students.

2    Q    Okay. I believe you testified just

3    a few minutes ago that you had 9th through

4    12th graders on your roll?

5    A    That's correct.

6    Q    And then, now, you just said you

7    had 7th, 8th, 9th and 10th.

8    A    I apologize. That was a mistake.

9    It's 9th, 10th, 11th and 12th.

10   Q    Okay. Were there only four blocks

11   in a day?

12   A    Yes.

13   Q    Would the third block be the block

14   that you had your lunch period, also?

15   A    That is correct.

16   Q    So, that was sort of a split class?

17   A    Correct.

18   Q    So, the three teachers to whom you

19   were designated as sort of being assigned to

20   their classrooms during the day were Sims,

21   Towns and Ezell?

22   A    Yes.

23   Q    Then, your first period, you might

24   float between other teachers?

25   A    Correct.

331

1    Q    Or you might stay in your resource

2    room, and teachers would send students to

3    you?

4    A    Correct.

5    Q    And in all four of those blocks,

6    you were -- I think your term has been

7    essentially servicing or, I mean, teaching

8    special education students? Correct?

9    A    Uh-huh. I was in the role of a

10   collaborative special education teacher. And

11   the general education teacher gives the

12   actual lesson, and then, I help the students.

13   On the days that I was designated to have an

14   observation, I would actually teach the

15   class.

16   Q    Okay. And then, also, not only

17   being in the classroom as part of your

18   collaborative effort with the classroom

19   teachers, you also assisted the classroom

20   teachers by allowing the students who, I

21   assume, needed the accommodation, to be sent

22   to the resource room to take a particular

23   test?

24   A    That's correct.

25   Q    Would they come into the resource

332

1    room to do other things besides taking the

2    test?

3    A    Sometimes I would bring students in

4    to -- like, if Ms. Ezell had an assignment --

5    let me back up. Did you actually mean just

6    first block?

7    Q    No, ma'am. Any time during the

8    day.

9    A    Okay. Good. No. There were times

10   when I would take students out of Ms. Ezell's

11   class to work on assignments, to read some of

12   the material, because some of them could not

13   read well, and that sort of thing. What

14   else? Generally just help the students.

15       Now, Ms. Towns' class, I didn't do that

16   initially. It wasn't until -- let me think.

17   I want to say it wasn't until after

18   September, when I went to Mr. Andrews, that I

19   was requested to start taking students out of

20   Ms. Towns' class.

21   Q    And you took them to your resource

22   room to help them there?

23   A    Right.

24   Q    All of these activities you've just

25   discussed with us about how you assisted the

333

1   special education students, they were
2   accommodations that were being made as part
3   of those students' educations? Correct?
4        A    That's correct. The interesting
5   thing about that, though, is that the
6   accommodations that I was told to help
7   provide were not listed in the IEP's.
8        And for instance, like, R. S., it's my
9   understanding that since there was no IEP in
10  her file from January through October, that
11  was a legitimate, legal document, that,
12  technically, she shouldn't have been
13  serviced, because there was no legal
14  documentation.
15       Q    I believe you said earlier, though,
16  there was something that was signed by her
17  mother, asking for some accommodations to be
18  made on her behalf?
19       A    Correct. But that expires.
20       Q    Ma'am, but there was -- the
21  question was, there was such a document in
22  existence in your file on behalf of R.?
23       A    Yes. Dated January of '05, I
24  believe it was.
25       Q    In talking about documentation, you

334

1   testified earlier that Starla Smith asked you
2   to sign three documents on behalf of two
3   students, and you did not get a chance to
4   look at those. You essentially just told
5   her, "No, I will not sign those"?
6        A    She told me that --
7        Q    Ma'am --
8        A    I'm sorry.
9        Q    -- I've only got 45 minutes, so I'm
10  just trying to kind of consolidate it all
11  down.
12       A    Could you repeat that again?
13            MS. HORTBERG: Can you read it
14              back?
15            (Whereupon, requested portion of
16              record read back by the court
17              reporter.)
18       Q    Is that correct?
19       A    That's correct.
20       Q    Okay. So, you don't have any
21  specific knowledge of who actually signed
22  those documents?
23       A    No, I don't.
24       Q    Okay. You don't know whether they
25  had already been signed by someone else on

335

1   behalf of the special education teacher?
2        A    I don't know.
3        Q    I believe you testified earlier
4   that Paul Strange was your mentor, and you've
5   also described him, at some point, as a paid
6   mentor. But you don't have any specific
7   personal knowledge that Mr. Strange ever
8   accepted payment to be your mentor, do you?
9        A    I know that there was a contract
10  with -- if I remember correctly, offered to
11  Mr. Strange on, I believe, the day that Ms.
12  Parris came. It was a small amount.
13       But, then, I was at a special education
14  meeting, if I remember correctly, at central
15  office, and I believe it was there that a
16  mentor program was talked about for the
17  teachers who were cooperating teachers. And
18  it was through some sort of an organization
19  for mentors. And if I remember correctly,
20  they indicated that the person -- the persons
21  were going to receive $500.00.
22       Q    My question was, you don't have any
23  personal knowledge that Paul Strange ever
24  accepted any monitory compensation for being
25  your mentor, do you?

336

1            MR. BRANTLEY: Well --
2            MS. HORTBERG: My question is --
3            MR. BRANTLEY: I object.
4            MS. HORTBERG: I understand all of
5              her background that she just
6              gave me, but she didn't answer
7              my particular question.
8            MR. BRANTLEY: I disagree. I think
9              she did answer it. I think the
10             -- you're just calling for a
11             "yes" or "no" on everything,
12             without explanation?
13           MS. HORTBERG: No. I'm just asking
14             her to answer that question.
15           MR. BRANTLEY: Personal knowledge?
16           MS. HORTBERG: Yes. Does she have
17             any personal knowledge that
18             Paul Strange ever received any
19             sort of monetary compensation
20             for being her mentor.
21           MR. BRANTLEY: She just answered
22             that.
23           MS. HORTBERG: Okay.
24       Q    So, "no" is your answer? You don't
25  have any personal knowledge that he ever

337

1 received --
2      MR. BRANTLEY: Well, I would say
3           she does have personal
4           knowledge.
5      MS. HORTBERG: She has personal
6           knowledge that there was money
7           being offered to some mentors.
8           But whether or not Paul Strange
9           accepted that money, no, sir,
10          she did not answer that she had
11          personal knowledge of that.
12     MR. FAULK: Why don't we just cut
13          through. I mean, do you have
14          any knowledge other than what
15          you've already told Ms.
16          Hortberg?
17     THE WITNESS: No.
18     Q    (By Ms. Hortberg) And I believe
19 you testified earlier that Paul Strange and
20 you coordinated to meet on a regular basis,
21 and you all just got together on your
22 schedules to do that, and that he also sat
23 down with you one day to discuss how to
24 prepare an IEP?
25     A    Yes.

338

1      Q    Okay. What other sorts of things
2 did you and Mr. Strange discuss as far as his
3 mentoring you as a special education teacher?
4      A    One day, he had me come into his
5 room, and he was doing a math lesson. I
6 believe it was for Ms. Pitchford's class,
7 some of the students in Ms. Pitchford's
8 class. And I would observe that sort of
9 scenario.
10          (Brief off-record.)
11     A    We discussed, not in great detail
12 or anything, how to write lesson plans and
13 that sort of thing. When I was in school, we
14 wrote lesson plans, but they were specific
15 things.
16          And in this scenario, I wasn't given any
17 kind of lesson plans or anything on a regular
18 basis until we were able to work that out
19 with the teachers, requesting that sort of
20 thing. So, he would try to show me what
21 needed to be included in a lesson plan and,
22 you know, things like that.
23     Q    Okay. And he also did that
24 evaluation of you?
25     A    Yes.

339

1      Q    And did you all have the same sort
2 of debriefing after that evaluation that you
3 had with Dr. Ruediger?
4      A    Mr. Strange and I, yes, we would --
5 to my recollection, we would talk about the
6 observation.
7      Q    Okay. And I believe, of the two --
8 or of the three evaluations that you had
9 during the course of your internship, Mr.
10 Strange was the one that gave you the highest
11 ratings? Correct?
12     A    Yes, I believe so.
13     Q    And none of those observations,
14 either by Dr. Ruediger or by Mr. Strange,
15 ever occurred in Stacey Ezell's class?
16 Correct?
17     A    That's correct.
18     Q    Do you know whether Dr. Ruediger
19 ever spoke with any of the other teachers
20 beyond the teacher in whose class you were
21 doing the teaching, as part of his
22 evaluation?
23     A    No. But I do know that he
24 conferenced -- the day that he came after I
25 had visited central office, he conferenced

340

1 with Mr. Pitchford during our lunch break.
2 That's what he told me he was going to do.
3      Q    Okay. But, I guess, going back to
4 that original question, the day that
5 Dr. Ruediger came to evaluate you in Ms.
6 Towns' math class, as part of that evaluation
7 or as part of his rating, was he going to
8 talk to Ms. Sims or Ms. Ezell about your
9 teaching in their classes?
10     A    No. It was my understanding that
11 it's only the observation done on that
12 particular day, at that particular time.
13     Q    And not in conjunction with any
14 input from any of the other teachers?
15     A    Correct.
16     Q    Okay. And I know we've gone on ad
17 nauseam about your discussions with various
18 people about your concerns about alleged
19 deficiencies with the special education
20 program at Houston County High School. Did
21 you ever take those concerns to any Houston
22 County Board of Education meeting?
23     A    No.
24     Q    Did you ever take those concerns to
25 any public meeting?

341

1    A    No.
2    Q    Did you ever prepare a petition to
3  take out to the community to get them to sign
4  to join with you in your concerns about the
5  special education program?
6    A    No. I was only there such a short
7  time, I felt that I could --
8        MR. FAULK: The answer is "no."
9        THE WITNESS: Okay. No. Thank
10           you.
11       MR. FAULK: Sorry.
12       THE WITNESS: It's okay. Thank
13           you.
14   Q    Have you told us today all of the
15  people with whom you've spoken about your
16  concerns about the special education program
17  at Houston County High School?
18   A    To my recollection?
19   Q    Yes.
20   A    Yes, to my recollection.
21   Q    And you do not have any knowledge
22  about how the special education programs were
23  being administered at any other school within
24  the Houston County system. Just the Houston
25  County High School where you were? Correct?

342

1    A    I believe, if I remember correctly,
2  in our class work at Troy, some of the
3  students were already teachers, maybe getting
4  their master's degree or something like that.
5  So, they would indicate certain things about
6  how things were done at their particular
7  school.
8    Q    And what teachers were those?
9    A    Oh, my gosh. I can't recall the
10  names from these classes.
11   Q    Do you know what schools they
12  taught at?
13   A    Actually, one was at Ashford, part
14  of Houston County.
15   Q    In what county?
16   A    Houston County. Ashford School.
17   Q    And that's a special education
18  teacher there?
19   A    Yes. I believe she was a dual
20  teacher. I think she had her -- I believe
21  she had an elementary teaching degree and was
22  going, I believe, for her master's in special
23  education or something like that.
24   Q    Okay. Any other teachers within
25  the Houston County system that you remember

343

1  from your Troy classes?
2    A    I just can't remember who else
3  might have been there. I'm sorry.
4    Q    Do you have any plans currently --
5  I know that you testified earlier that you
6  are no longer employed by the Dothan City
7  School System.
8    A    At this point, uh-huh.
9    Q    Do you have any plans on suing
10  them?
11   A    Oh, heaven's, no. Not at this
12  point in time. No, I don't.
13   Q    Are you currently pursuing
14  employment elsewhere?
15   A    Yes.
16   Q    Okay. In what systems are you
17  currently pursuing employment?
18   A    Dothan City.
19   Q    Have you applied for a particular
20  position with Dothan City Schools?
21   A    Yes.
22   Q    Which position is that?
23   A    Special education teacher at Girard
24  Elementary -- I'm sorry -- Girard Middle
25  School, and I've requested Dothan High

344

1  School.
2    Q    Previously, for the year and a half
3  that you were employed by Dothan City, you
4  were employed at Beverlye Middle School --
5    A    Right.
6    Q    -- as a special education teacher?
7    A    Yes.
8    Q    Has someone been employed at
9  Beverlye Middle School to take the position
10  that you held at that time?
11   A    I believe they're -- yes.
12   Q    And I'm assuming, when you were
13  nonrenewed by the Dothan City School System,
14  you were not given a reason for that
15  nonrenewal?
16   A    No.
17   Q    Have you ever told another teacher
18  that you were going to take down the Houston
19  County High School?
20   A    Heavens, no.
21   Q    You never said that?
22   A    Absolutely, no.
23   Q    During the time that you were at
24  Houston County High School as an intern, Paul
25  Strange never asked you to write an IEP?

345

1  Correct?
2     A    He came back to me and said, "Yes,
3  you'll need to write an IEP." And I reminded
4  him that my internship agreement says I can't
5  do that, legally speaking, in terms of, you
6  know, actually being responsible for the IEP.
7     Q    So, you did not ever prepare an IEP
8  while you were at Houston County High School?
9     A    Oh, no.
10    Q    Do you remember what day Mr.
11 Strange allegedly asked you this?
12    A    I told -- the original -- I was
13 approached originally on Wednesday. I think
14 I already gave the information. I can't
15 remember the date, right off, again. But,
16 then, the following Monday is when Mr.
17 Strange came back to me -- I'm sorry. I went
18 to him and told him what had happened. He
19 said he would get back with me.
20       It was either that same day or possibly
21 the next day, somewhere during that week, he
22 confirmed that we would have to write the
23 IEP. And she was on my roll, so --
24    Q    Going back to -- you're talking
25 about the Wednesday incident. Was that with

346

1  Cathy Keasler?
2     A    Yes.
3     Q    And you said that "we" had to go
4  back and do that. Did Mr. Strange actually
5  prepare some documentation for whatever
6  student it is you're referring to?
7     A    Eventually, yes. He had indicated
8  -- it was my understanding that he was
9  indicating to me that I would need to do
10 that. And then, when I reminded him of my
11 internship agreement --
12    Q    Then he took care of whatever
13 needed to happen?
14    A    Yes.
15    Q    How many special education students
16 off of your roll were in Ms. Sims' second
17 block class?
18    A    I'm not 100 percent sure. I would
19 probably say anywhere from probably five to
20 maybe even eight. It could be more.
21    Q    What about Ms. Ezell's second block
22 class? How many special education students
23 from your roll were in that class?
24    A    Oh, I'm sorry. That was what I
25 was --

347

1     Q    I asked you about Ms. Sims.
2     A    I'm sorry.
3        MR. FAULK: That's what you asked
4        her.
5        MS. HORTBERG: No. I asked about
6        Ms. Sims' class.
7     A    I apologize. That's my mistake.
8  Right offhand, I would probably say -- I'll
9  just stick with five to eight, I think. I
10 think that's safe to say.
11    Q    In both Sims' and Ezell's second
12 block classes?
13    A    Yes.
14    Q    Okay. All total, you only had 19
15 to 22 students on your roll? Correct?
16    A    That's correct. Let me think here.
17 Some of the students might possibly have been
18 on Mr. Strange's roll or possibly even Mr.
19 Payne's roll. I need to try to remember that
20 a little bit more clearly.
21    Q    Did you keep a copy of your roll?
22    A    I have no clue. I mean, I've not
23 located anything at this point in time.
24    Q    Have you looked?
25    A    I have looked for a lot of things.

348

1  Yes.
2     Q    And how many special education
3  students from your roll were in Ms. Towns'
4  math class?
5     A    Just about, I would say, all of my
6  students, if I remember correctly.
7     Q    So, Ms. Towns had between 19 and 22
8  students in that class, all of whom were
9  special education?
10    A    In the neighborhood of that. I
11 can't say specifically 19 to 22.
12    Q    What about Ms. Ezell's fourth block
13 science class? You said you remembered, in
14 particular, one student who was a senior in
15 that class. How many students from your roll
16 were in that class?
17    A    Two, that I recall.
18    Q    And what were those students'
19 names?
20    A    That was E. S. and A. M.
21    Q    Do you have a specific recollection
22 of any other students who were in any other
23 particular class?
24    A    Right offhand, not right this
25 second.

349

1      Q    Do you have a particular
2  recollection of the names of the 19 to 22
3  students that were in your class -- I mean,
4  that were on your roll?
5      A    Now, as part of one of the requests
6  for something, because it had the names of
7  the students, we declined to include that, I
8  believe.  But I do have a list.
9      Q    You do have a list?
10     A    Yes.
11     Q    So, assuming, once we get this
12 protective order entered, it should not be a
13 problem for you to come back and fill in the
14 names of those students in response to
15 whatever request that was?
16     A    That's correct.
17     Q    But you don't have any particular
18 documentation from the time you were at the
19 school about that?  That's just from your
20 recall now that you're going to provide that
21 list of students?
22     A    I was instructed not to turn a list
23 of students in because it was part of the
24 confidentiality thing.
25     Q    But I'm saying, is that a list that

350

1  you had at the time you were at Houston
2  County High School --
3      A    Yes.
4      Q    -- or is that something you've come
5  up with after the fact?
6      A    No.  That is a list of students
7  that I had from Houston County.
8      Q    Okay.  What else did you keep from
9  the days that you were an intern at Houston
10 County High School?
11     A    Just my schedule and the list of
12 students on all of our rolls, because we had
13 been trying to determine who needed to cover
14 what and that sort of thing.  I may have some
15 other things, but I just can't recollect what
16 they might be.
17     Q    Have you turned over everything
18 that you've found besides that list?
19     A    Yes.
20     Q    Are there other documents that you
21 have that contain names of students that you
22 have not turned over?
23     A    Not that -- I don't think, that,
24 you know, relate to this.
25     Q    Well, I would think that anything

351

1  related to the time that you spent at Houston
2  County High School is related to this
3  lawsuit.  So, if you have documents that you
4  think -- or that pertain to your time at
5  Houston County High School, could you turn
6  those over to your attorney?
7      A    Yes, I will.
8         (Whereupon, Defendant's Exhibit 31
9         marked for identification.)
10        MS. HORTBERG:  Let me introduce
11        this as Defendant's Exhibit 31.
12     Q    Have you ever seen that document
13 before?
14     A    Actually, yes.  I don't have a copy
15 of it.  That was one of them that I probably
16 wasn't able to print off.  But, yes.
17     Q    Are you the author of that e-mail
18 message or Blackboard message there?
19     A    Yes.
20     Q    And was that sent to all of the
21 students in your intern seminar?
22     A    Yes.  They have access to it.  It
23 wasn't actually sent to them, but they had --
24 I believe they could click on her name or my
25 response or whatever and -- yes.

352

1      Q    Did your professor and any other
2  administrator have access to that posting?
3      A    I'm sorry?
4      Q    Would your professor and/or any
5  other administrator from Troy have had access
6  to that posting, as well?
7      A    It's my understanding that only
8  Dr. Jones would have access to this.
9      Q    Okay.  And have you had a chance to
10 review your posting?
11     A    I haven't read the whole thing.
12     Q    Okay.  Why don't you take some time
13 and do that for me?
14     A    (Witness reviewing document.)
15 Uh-huh.  Okay.
16     Q    That posting seems to discuss one
17 teacher.
18     A    Uh-huh.
19     Q    And is that teacher Stacey Ezell?
20     A    Yes, it is.
21     Q    Was this a posting that you made
22 after that other posting that you made about
23 Ms. Ezell?
24     A    I would have to check the dates to
25 be sure.

353

1      MR. BRANTLEY:  We haven't gotten
2          this.  Can you make a copy of
3          this before we leave?
4      (Brief off-record.)
5      Q     What I was referring to a minute
6  ago were Defendant's Exhibit 10 and 11, where
7  you referenced a teacher in those.  And you
8  testified earlier the teacher about whom you
9  were referencing was Stacey Ezell.
10     A     That's correct.
11     Q     What are the dates on 10 and 11
12 versus the one I just gave you, that he just
13 walked away with?
14     A     It was September 11th.  So, this
15 was -- when we do our own, then we're
16 supposed to go in and have conversations and
17 respond to comments that those persons have
18 made.
19     Q     Okay.  And the Amy that you
20 referred to -- well, I guess we have to wait
21 on him to bring that back.
22     A     It's Amy Deese.
23     Q     Okay.  And she is currently
24 employed by the Houston County Board, at
25 Houston County High School?

354

1      A     Correct.
2      Q     Or she was --
3      A     She was.
4      Q     -- as of the time that you were
5  there?
6      A     That's correct.  She was an
7  intern/contract teacher.
8      Q     Okay.  Did you ever receive any
9  input from Dr. Jones about any of these
10 postings?
11     A     No, not personally, that I can
12 recall.
13     Q     I mean, "personally" being her
14 coming to you personally or --
15     A     That, or her sending me an e-mail,
16 that I can recall, that was directly from
17 her, saying anything.  Not to my knowledge.
18 Not to my recollection.
19     (Off-record discussion held.)
20     Q     I just have one or two other quick
21 follow-ups.  Do you have any -- and I'm not
22 talking about that any more, so we're done.
23     A     Okay.
24     Q     Do you have any personal notes or
25 that notebook or anything like that that

355

1  would show who was in attendance at all of
2  those meetings, beyond the documents that
3  we've gone through today?
4      A     Which meetings?
5      Q     Any of the meetings that we've
6  discussed today.
7      A     Oh, okay.  Do I have any documents?
8      Q     Uh-huh.
9      A     Not that I know of.
10     Q     Okay.  You've discussed a lot of
11 meetings today.  And if there was not a
12 document associated with that meeting, are
13 you going by your own recollection of that
14 meeting to tell us who was in attendance at
15 that meeting?
16     A     Yes.  For instance, like, when Ms.
17 Parris came and Mr. Andrews came.  Yes.
18     Q     You don't have any notes or
19 anything in writing that actually evidences
20 who was present at those meetings?  This is
21 just your recollection?
22     A     No, I don't.  Yes, that's correct.
23     Q     Do you know how many special
24 education students were in the regular
25 classroom setting in Ms. Ezell's classroom

356

1  prior to the time that you became an intern
2  there?
3      A     No.  I mean, the beginning of that
4  school year that I was there?  Is that what
5  you're saying?
6      Q     No, ma'am.
7      A     Or the previous?
8      Q     Correct.
9      A     Okay.  No, I don't.
10     Q     You don't have any knowledge about
11 the 15 years prior to the time that you came
12 to Houston County High School, how many
13 special education students were in her class
14 or how the special education program was
15 being administered in her class during those
16 15 years?
17     A     No, I don't.
18     (Brief recess.)
19
20          EXAMINATION
21
22 RESUMED BY MR. WALDING:
23     Q     Mrs. Miller, Defendant's 31, the
24 document that was just handed to you
25 earlier --

357

```
1     A    Yes.
2     Q    -- does that document say anything
3   about this concern that you had that some of
4   the students had no IEP's?
5     A    No.  That wasn't what the
6   discussion was about.
7     Q    Yes, ma'am.  Does that document say
8   anything about this concern that you had that
9   the IEP's were, in your opinion,
10  inappropriate and needed to be amended and
11  rewritten?
12    A    No.  It wouldn't be appropriate of
13  me to comment on that in this forum.
14    Q    That document doesn't say that,
15  though, does it?
16    A    No.
17    Q    Does that document say anything
18  about this alleged incident where Cathy
19  Keasler asked you to write an IEP?
20    A    No.
21    Q    And does that document say anything
22  about the fact that you were not permitted to
23  write IEP's because of your internship
24  agreement?
25    A    No.
```

358

```
1     MR. WALDING:  All right.  Thank
2         you, ma'am.
3     MR. BRANTLEY:  Is that it?
4     MR. MUSSO:  I just want to state
5         real quickly on the record, I
6         have a pending motion to resume
7         the deposition for the Troy
8         University and Troy individual
9         defendants.  And, you know, the
10        judge is going to rule on that
11        when the judge rules on that.
12    MR. FAULK:  We had originally
13        objected to taking a second
14        deposition, and we still object
15        to a second deposition, as
16        such.
17        What we'll do, is -- we
18        concede, of course, your right
19        to ask questions.  But what I
20        prefer to do is recess this
21        deposition, pending your turn,
22        and then, reserve our
23        cross-examination until you
24        have completed yours.
25    MR. MUSSO:  That's fine with me.
```

359

```
1     MR. FAULK:  If we can agree on
2         that, I can tell the Court
3         tomorrow that we're withdrawing
4         our objection.
5     MR. MUSSO:  I don't have a problem
6         with you doing your cross after
7         mine.
8     MR. FAULK:  And if we could just
9         use the same reporter?
10    MR. MUSSO:  I would like to use the
11        same court reporter.
12    MR. FAULK:  Are you available on
13        the 24th?
14    COURT REPORTER:  Sure.
15    MR. MUSSO:  Are y'all available to
16        come on the 24th?  I had
17        originally set that date, but I
18        didn't --
19    MR. WALDING:  I assume so.
20    MS. HORTBERG:  I mean, we still
21        have the right to come back and
22        ask any follow-up questions
23        after y'alls cross, since y'all
24        are reserving the right to
25        cross her until after --
```

360

```
1     MR. BRANTLEY:  Right.  That's fine.
2         Yes.
3
4         DEPOSITION ADJOURNED
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1               DEFENDANT'S EXHIBIT NO. 2

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## Pam Parris

**From:**      "Victoria Morin" <vmorin@troyst.edu>
**To:**        "Pam Parris" <pparris@troyst.edu>
**Sent:**      Tuesday, April 27, 2004 1:52 PM
**Subject:**   Nancy Miller

Pam,  Just curious=== When was the deadline for turning in letters of recommendation for internship? Nancy Miller dropped hers off yesterday while I was advising students.

In class, Nancy did not take corrective feedback well and, when things did not go well for her, or she did not perform adequately, she was quick to make excuses or blame others.  She also has used inappropriate language in the classroom. (The only student who ever did == in my 10+ years at TSUD!) I did speak to her about that, and she did apologize.

I have concerns about her willingness to receive and use corrective feedback.

I will send on the recommendation to you today.
Victoria


DEFENDANT'S EXHIBIT
2

1                    DEFENDANT'S EXHIBIT NO. 3

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



# Faculty Recommendation of Prospective Internship
## College of Education

**Student's Name:** Nancy Miller

**Proposed Internship Semester:** Fall 2004

**Check one:**

☐ I recommend this student for his/her internship without reservation.

☒ I have some reservations regarding this student's readiness for internship.
(Please explain in the comment section below.)

☐ I do not recommend this student for his/her internship.
(Please explain in the comment section.)

*Please comment on such items as academic background, personal appearance, tact, self-control, dependability, cooperation, and promptness. If you have indicated any reservations or if you did not recommend this student for internship, please explain your concerns.*

I have no reservations about Nancy's academic readiness for internship. My concerns are about her willingness to receive and use corrective feedback. I believe that Nancy can have a successful student internship experience if she can reflect on what her supervisors tell her about her performance and make a commitment to follow through on their recommendations.

*Your comments will be shared with the student.*

Cecilia Morin, phd
**Signature**

Associate Professor
**Title**

4/27/04
**Date**

Please complete and return to:
Director, Professional Internship Program
Troy State University Dothan
Post Office Box 8368
Dothan, AL 36304-0368



DEFENDANT'S EXHIBIT
3

1                    DEFENDANT'S EXHIBIT NO. 4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



TROY STATE UNIVERSITY DOTHAN

P. O. Box 8368
Dothan, Alabama 36304-0368
(334) 983-6556

June 1, 2004

Nancy Miller
100 Oak Manor Court
Midland City, AL 36350

Dear Ms. Miller:

The internship application process required completion of three Faculty Recommendation of Prospective Intern forms. At least one of the forms submitted for you has an indication of some reservations about recommendation for internship. TSUD policy requires that you meet with the TEP Committee regarding these reservations. The committee will then determine your eligibility for internship. You may request to review the recommendation forms prior to the meeting by contacting me at extension 1361.

Your meeting with the TEP Committee has been scheduled for <u>Tuesday June 15, 2004,</u> at <u>12:30</u>. The meeting will take place in <u>Adams Hall Room 304</u>. If you have any questions prior to this meeting please contact me at (334) 983-6556 extension 1361.

Sincerely,

*Pamela G. Parris*

Pamela G. Parris
Director, Professional Internship Office

PGP/njt


DEFENDANT'S EXHIBIT
4



DEFENDANT'S EXHIBIT NO. 5

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ Middle _____  District of _____ Alabama _____

Nancy Miller

**SUMMONS IN A CIVIL ACTION**

V.

Houston County board of Education; et al.

CASE NUMBER: 1:06-cv-940-WKW

TO: (Name and address of Defendant)

Kenneth Lord
103 Branchboro Court
Dothan, AL  36301

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Winn Faulk
524 S. Union St.
Montgomery, AL  36104

an answer to the complaint which is served on you with this summons, within _____ 20 _____ days after service
of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

_Debra P. Hackett_

CLERK

(By) DEPUTY CLERK

DATE   10/19/06

DEFENDANT'S
EXHIBIT
3

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| Service of the Summons and complaint was made by me[1] | DATE |
|---|---|
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
               Date                       *Signature of Server*

                                        _____
                                        *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.



ECEIVED

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION      OCT 1 6 2006

| | | |
|---|---|---|
| NANCY MILLER, | * | CLERK |
| | * | U.S. DISTRICT COURT |
| PLAINTIFF, | * | MIDDLE DIST. OF ALA. |
| | * | |
| | * | |
| v. | * | Case No. 1:06-CV-940-WKW |
| | * | |
| | * | |
| | * | |
| HOUSTON COUNTY BOARD OF | * | JURY DEMANDED |
| EDUCATION; | * | |
| KENNTH LORD; | * | |
| RILEY JOE ANDREWS; | * | |
| TIM PITCHFORD; | * | |
| PAUL STRANGE; | * | |
| STACY EZEEL; | * | |
| TROY UNIVERSITY, DOTHAN; | * | |
| SANDRA JONES; | * | |
| PAM PARRIS; | * | |
| and | * | |
| GREG RUEDIGER, | * | |
| | * | |
| DEFENDANTS. | * | |

## COMPLAINT

### JURISDICTION AND VENUE

1. This Court has jurisdiction of the subject matter of this claim under the provisions of 28
U.S.C. §1331, because this action arises under an Act of Congress relating to damages
arising from a deprivation of Plaintiff's right to free speech under the United States
Constitution; specifically, 42 U.S.C. §1983, and the First and Fourteenth Amendments to
the U.S. Constitutions.

2. Venue is proper in this Court under 28 U.S.C. §1391, in that all parties reside in the
Southern Division of the Middle District of Alabama, and the tort sued upon occurred in
said Division.

## STATEMENT OF THE PARTIES

3.  Plaintiff Nancy Miller is an adult resident citizen of Houston County, Alabama.

4.  Defendant Houston County Board of Education is a governmental entity duly organized and existing under the laws of the State of Alabama.

5.  Defendant Kenneth Lord is an adult, resident citizen of Houston County, Alabama. At the time of the events complained herein, Mr. Lord was Superintendent of Education of the Houston County Board of Education. He is now retired.

6.  Defendant Riley Joe Andrews is an adult, resident citizen of Houston County, Alabama. At the time of the events complained herein, Mr. Andrews served as Federal Programs Coordinator for the Houston County Board of Education. He is now retired.

7.  Defendant Tim Pitchford is an adult, resident citizen of Houston County, Alabama. Mr. Pitchford is now Superintendent of Education for Houston County Board of Education, but at the time of the events complained of herein, he served as Principal at Houston County High School in Columbia, Alabama.

8.  Defendant Paul Strange is an adult, resident citizen of Houston County, Alabama. At the time of the events complained herein, he was employed as a teacher, assigned to mentor the Plaintiff at Houston County High School in Columbia, Alabama.

9.  Defendant Stacy Ezell is an adult, resident citizen of Houston County, Alabama. At the time of the events complained herein, she was employed as a teacher at Houston County High School in Columbia, Alabama

10. Defendant Troy University, Dothan is a legal entity, believed to be created by charter by the State of Alabama, having a principal place of business in Dale or Houston County, Alabama.

11. Defendant Sandra Jones is an adult, resident citizen of the Southern Division of the Middle District of Alabama. At the time of the events complained herein, she served as Dean of the Troy State University, Dothan, College of Education.

12. Defendant Pam Parris is an adult, resident citizen of the Southern Division of the Middle District of Alabama. At the time of the events complained herein, she served as Director of Professional Internship Programs of Troy State University, Dothan.

13. Defendant Greg Ruediger is an adult, resident citizen of the Southern Division of the Middle District of Alabama. At the time of the events complained herein, he served as Troy State University, Dothan's advisor to the Plaintiff in connection with her internship.

## STATEMENT OF THE FACTS

14. At the time of the events made the basis for the action, Plaintiff, Nancy Miller, was a student intern at Troy State University, working as a school teacher under contract with Defendant Houston County Board of Education.

15. Plaintiff started work at Houston County High School in Columbia, Alabama, as a contract teacher under a nine month contract on July 28, 2004, for the 2004-2005 school year, in the field of special education.

16. Plaintiff noticed various acts of malfeasance, misfeasance and nonfeasance in violation of the laws and regulations governing the special education program. When she noticed these violations she immediately reported such to Paul Strange, who was her mentor and supervisor at the school.

17. Plaintiff reported, among other shortcomings, that Individualized Education Program (IEPs) were being either not prepared, wrongly prepared or even fabricated and backdated; that one or more students had not been switched from a resource room to a full inclusion room in

3

violation of board special education policy; that eight students had not been given Special Education History, although their IEPs called for such; that two science teachers had requested not to have a special education teacher in their classes, although they both had special education children in their classrooms; that at least one special education student with mental retardation had been failed because the teacher declared that the child was "just lazy and didn't do his work," despite such teacher's knowledge from the child's file that the child did not have the cognitive skills for the class; that there were at least two special education students (one of whom was homebound) for whom there were no IEPs prepared; that several students had only temporary services sheets with no current IEPs for the 2004-2005 school year; that one teacher prepared an IEP in front of Plaintiff with no IEP meeting with the student and his parents as required by law; that 57 special education students had no IEPs in their files as of August 2004; that school personnel had been ridiculing special education student's hair styles and appearance; that staff members had been making up IEPs without the customary meetings needed with the students and their parents; and that Plaintiff had been asked to write IEPs for those students who did not have IEPs and then to back date such IEPs so that the school would appear be in compliance with the laws governing special education students, which Plaintiff had refused to do. One of the teachers whose conduct was complained of by Plaintiff was Defendant Ezell.

18. Plaintiff reported the above referenced deficiencies to her mentor, Paul Strange, who told Plaintiff that the illegal IEPs had to be done and that she would have to sign off on them. Plaintiff made substantially similar reports, including a report as to Mr. Strange's reaction to her original report, to Tim Pitchford and Riley Joe Andrews, as well as to Dr. Ruediger, Ms. Parris, and Dr. Sandra Jones.

19. Shortly thereafter Mr. Andrews sent and undated letter to Ms. Parris expressing "concerns" about Plaintiff. Near in time to the Andrews report, Mr. Strange and Ms. Ezell co-authored a report to Parris regarding asserted deficiencies in Plaintiff's performance. Both the Andrews report and the Strange-Ezell report contained falsehoods or placed plaintiff in a derogatory false light, and such reports were calculated to have a pre-text for the withdrawal of Plaintiff's internship.

20. Dr. Greg Ruediger was Plaintiff's internship advisor at Troy State University. Following the advent of Plaintiff's reports, the principal at Columbia High School, Tim Pitchford, contacted Dr. Ruediger's supervisor at Troy State University, Pam Parris, who oversees all interns at the University. Pitchford made his displeasure known to Parris. Parris then removed Dr. Ruediger as supervisor of Plaintiff's internship, and Ruediger was replaced by Mary Brazelle. Dr Ruediger asked to be placed back over Miller's internship and Parris reinstated Dr. Ruediger over Plaintiff's internship. Ruediger then gave Plaintiff a poor rating on her evaluation, and he warned Plaintiff that he would need to "pull" Miller from the internship at Houston County High School, because of all of the things that Miller was reporting and writing about at the school.

21. When the Plaintiff refused to keep quiet about the special education program at Columbia High School, her internship was withdrawn and she was given an incomplete grade for the internship, and, subsequently, she was terminated from her position as a teacher.

22. Plaintiff's first notice of the withdrawal of her internship occurred on October 14, 2004, in a meeting between Plaintiff, her husband, and Parris, who confirmed the withdrawal of Plaintiff's internship by letter to Defendant Lord dated October 18, 2004. On October 20, 2004, Mr. Lord, who had knowledge of the Plaintiff's reports, as well as his staff's reaction

to such reports, had a letter dated October 19 hand delivered to Plaintiff at her school, informing her that, due to the withdrawal of her internship, her teaching contract was also terminated; whereupon, Plaintiff was escorted off campus.

## COUNT I

## VIOLATION OF 1ST AMENDMENT RIGHT TO FREE SPEECH

23. Plaintiff incorporates herein by this reference each and every allegation contained in each paragraph above. Plaintiff avers that all acts and omissions attributed to the Defendants were done under color of state law, policy, practice or custom; and that, as a practical matter, each individual defendant was the highest repository of authority to take the action attributed to such actor or was so situated that his or her acts or edicts could fairly be construed as constituting official policy. All individuals are sued in their individual capacities.

24. Plaintiff as a citizen of The United States of America had a right under the First and Fourteenth Amendments to the Constitution of the United States to speak out on such, as herebefore alleged.

25. Defendants violated Plaintiff's right to speak freely about such policies and violations of law that she witnessed by either causing her to lose her internship or causing her to lose her job, or both.

26. Defendants took such adverse actions and terminated in order to stifle Plaintiff's willingness and ability to speak honestly about violations of law, and to retaliate against her for having made such reports.

27. Defendants conduct was willful, malicious and oppressive, and as a proximate consequence of such conduct, Plaintiff lost income, had her college education delayed, was damaged in her reputation and suffered emotionally.

## DEMAND FOR JUDGEMENT

**WHEREFORE PLAINTIFF PRAYS** for judgment against Defendants as follows:

A.   An order directing Defendants to reinstate Plaintiff to her position with the Houston County Board of Education, and with all back pay and benefits under the contract the contract signed and dated on July 28, 2004;

B.   Awards of compensatory and punitive damages;

C.   An order directing Defendants to pay Plaintiff's reasonable attorney's fees and costs; and

D.   Such other and further relief as this Court may deem just and appropriate in the circumstances.

WINN FAULK
ASB-3091-L48W
Attorney for Plaintiff

**OF COUNSEL:**
FAULK & REED
524 S. Union Street
Montgomery, Alabama 36104-4626
Phone:  334.834-2000
Fax:    334.834-2088
winnfaulk@bellsouth.net

## JURY DEMAND

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY.

WINN FAULK
**Attorney for Plaintiff**

7



1                    DEFENDANT'S EXHIBIT NO. 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Nov 09 04 12:28p    HOUSTON COUNTY SCHOOLS    3347921016    p.1
16/18/2004  13:26    3349838...2    TSUD    PAGE  03



**TROY STATE UNIVERSITY DOTHAN**

P. O. Box 8368
Dothan, Alabama 36304-0368
(334) 983-6556

### Internship Agreement Between Houston County Schools and Troy University Dothan Campus

July 28, 2004

Due to the high demand and low availability of special education teachers, Houston County Schools, specifically Superintendent Kenneth Lord, is experiencing a hardship situation. Mr. Tim Pitchford, principal of Houston County High School, has requested permission for Nancy Miller to complete her internship with Troy University Dothan while employed as a special education teacher at Houston County High School. This permission is granted under the following conditions:

1. Ms. Miller will continue to be employed throughout the internship period (August 16 – December 7, 2004).
2. Mr. Paul Strange will serve as cooperating teacher for Ms. Miller.
3. Ms. Miller will complete the same requirements as all other interns at Troy University Dothan with the following underlined exceptions:
   a. Internship will last a total of 70 school days. Absences will be made-up and extend beyond December 7, 2004.
   b. <u>Mr. Strange will visit Ms. Miller's classroom one period each week. Ms. Miller will visit Mr. Strange's classroom one period each week.</u> The intern is to use the log form provided to record the time spent in Mr. Strange's classroom. This log, signed by the intern and Mr. Strange, is to be turned in at the end of the semester to the Director of Internship by the intern.
   c. <u>The school administration is responsible for IEP meetings. Ms. Miller's attendance is as that of a student intern. She cannot be held legally responsible for the meetings.</u>
   d. Mr. Strange will conduct four official evaluations during the internship. The first observation will occur during the first two weeks of internship. The remaining three evaluations will occur approximately every three weeks. The white and the goldenrod copies of the evaluation form are to be mailed to the Director Professional Internship immediately as each one is completed.
   e. Mr. Strange is to review all lesson plans, handouts and notes to parents created by Ms. Miller. The first five lesson plans taught must be in the long format shown in the *Internship Handbook*. An additional five lessons during the term are to be written in the long format. Lesson plans written for the university supervisor visits written in the long format count as part of the required ten. All other lesson plans are to be written using the short form in the handbook.

**THE TROY STATE UNIVERSITY SYSTEM**
Troy  •  Dothan  •  Montgomery  •  Worldwide

DEFENDANT'S EXHIBIT

6

NOV 09 04 12:28p     HOUSTON COUNTY SCHOOLS     334/821016     p.2
10/18/2004   13:26    334983   2                    TSUD                            PAGE  04

f. ~~Dr. Victoria Morin,~~ *Dr. Greg Ruselyon* the University Supervisor, will conduct six official observations and evaluations during the period. Ms. Miller will complete the *Report of Internship* form provided in the handbook after each university supervisor visit.

g. A daily schedule must be provided by Ms. Miller to the Internship Office no later than August 30, 2004. This is to be used to schedule visits.

h. The intern will complete the internship records and requirements including documentation of the 485 hours of internship.

i. All summer coursework must be completed and internship pre-requisites met.

j. Ms. Miller must attend the Internship Seminar classes.

k. Ms. Miller is to e-mail Ms. Parris weekly about the internship.

l. The Director of Internship will contact Mr. Strange and Ms. Miller to schedule an appointment to discuss the progress of the internship. This visit will occur near the midterm of the semester.

I understand and agree to the above conditions of internship for Ms. Nancy Miller.


Tim Pitchford, Principal
Agent for Houston County Schools

Pam Parris, Director Professional
Internship, Agent for Troy
University, Dothan Campus


Paul Strange, Cooperating Teacher
Houston County High School

Dr. Sandra Lee Jones, Dean
Agent for Troy University Dothan
Campus


Nancy Miller, Intern
Troy University, Dothan Campus


cc: Morin



DEFENDANT'S EXHIBIT NO. 7



# College of Education
## Internship Observation

Circle # of Observation  (1)  2  3  4  5

Student's Name: Nancy Miller
Date: 8-26-04
Cooperating Teacher: Mr. Strange
Grade/Subject: Math
School: Houston County High School
University Supervisor: Rucinger

Coding Scale:
(5) Excellent, Consistent Performance
(4) Above Average performance
(3) Average Performance
(2) Minimally acceptable performance
(1) Unsatisfactory performance
(NO) Not Observed

| Competency Observed The Intern: | Score |
|---|---|
| 1. Prepares and employs developmentally appropriate lessons and resources including technology - overhead | 3 |
| 2. Planning skills and organization of materials | 3 |
| 3. Presents the lesson: | |
| a. Introduction | a. NO |
| b. Development | b. No |
| c. Closure | c. NO |
| d. Evaluation | d. NO |
| 4. stimulate interest and growth in reading and an appreciation for reading in the content area by using a variety of teaching strategies | NO |
| Provides practice and review | 3 |
| Demonstrates knowledge of content | 3 |
| Transitions are smooth and appropriate | NO |
| Interacts well with students | 3 |
| Monitors student performance | 3 |
| Provides students with feedback | 3 |
| Manages class behavior | NO |
| Maintains student involvement | NO |
| Manages class time | NO |
| Speaks standard, clear English | 3 |
| Writes standard, clear English | 3 |
| Exhibits a professional demeanor | 3 |
| Evidence of reflective thinking | 3 |
| Demonstrates a positive attitude and enthusiasm for teaching | 3 |
| Demonstrates reliability | 3 |

Organizational meeting
Observed student intern interacting with students during Consumer Math class.

Discussed Curriculum Inclusion attempts, Individualized Education Program Development Future programming 13 students in a regular education classroom.

Meet with Mr. Strange and discussed student performance. Indicated student "doing a fine"

Recommendation/Requirements for Improvement:

Date of Next Observation: TBA

Intern's Signature: Nancy Miller    Date: 8/26/04
Evaluator's Signature: G J R    Date: 8-26-04

DEFENDANT'S EXHIBIT

Revised 05/2003



DEFENDANT'S EXHIBIT NO. 8

Nancy Miller Observation and Debriefing
August 26, 2004
Approximately two hours

The observation occurred at 12:20 in a regular education math classroom. Ms. Towns indicated that Ms. Miller was interacting well with the students. After approximately twenty minutes students were dismissed for lunch. During this time Ms. Miller had organized a meeting with Mr. Strange. The meeting was held in the future classroom of Ms. Miller (classroom floors were being cleaned or carpeted). Mr. Strange did not attend the thirty minute meeting. Ms. Miller stressed her concerns regarding individualized education programs and the general structure of the special education program. It was recommended that she initiate attempts to comply with the current special education law. Specific suggestions included discussing with Mr. Strange and Mr. Payne her difficulties and establishing deadlines to accomplish the task. It was also suggested to follow appropriate protocol if changes did not result.

Ms. Miller returned to complete her lesson in the regular education math class. Upon completion, debriefing occurred in the library with Ms. Miller and Mr. Strange. Mr. Strange indicated that Ms. Miller was doing well despite having not completed an observation. We discussed briefly inclusion and individualized education programs. It was noted that Mr. Strange was hesitant to communicate and make any eye contact. He indicated that he would complete an observation sometime soon. Mr. Strange left the meeting as further discussion addressed specific intern expectations, curriculum, and strategies to promote positive change.

DEFENDANT'S EXHIBIT





# College of Education
# Internship Observation

11:20 – 12:20

Circle # of Observation   ① 2  3  4  5

**Student's Name:** Nancy Miller                    **Date:** Aug 30, 2004
**Cooperating Teacher:** Paul Strange          **Grade/Subject:** Math
**School:** Houston County High School    **University Supervisor:** Ruediger
**Coding Scale:** (5) Excellent, Consistent Performance     (2) Minimally acceptable performance
                (4) Above Average performance           (1) Unsatisfactory performance
                (3) Average Performance                 (NO) Not Observed

| Competency Observed<br>The Intern: | Score |
|---|---|
| 1. Prepares and employs developmentally appropriate lessons and resources including technology | 3 |
| 2. Planning skills and organization of materials | 3 |
| 3. Presents the lesson: | |
| a. Introduction | a. 3 |
| b. Development | b. 3 |
| c. Closure | c. 3 |
| d. Evaluation | d. 3 |
| ...mulate interest and growth in reading and an appreciation for reading in the content area by using a variety of teaching strategies | NO |
| Provides practice and review | 4 |
| Demonstrates knowledge of content | 3 ← |
| Transitions are smooth and appropriate | 3 |
| Interacts well with students | 3 |
| Monitors student performance | 3 ← |
| Provides students with feedback | 3 |
| Manages class behavior | 3 (no problems) |
| Maintains student involvement | 3 |
| Manages class time | 3 → |
| Speaks standard, clear English | 4 |
| Writes standard, clear English | 4 |
| Exhibits a professional demeanor | 4 |
| Evidence of reflective thinking | 3 |
| Demonstrates a positive attitude and enthusiasm for teaching | 3 |
| Demonstrates reliability | 3 |

✗ provided mult. chart

* Provided several examples of mult. problems.

Page 75   3 problems
      76 – 12 problems
worksheet  6 problems

Put more problems on projector

(good)
*Put assignments on the overhead projector

walk around more at start

(no problems) ← students were tardy

work more examples

DEFENDANT'S EXHIBIT 1

**Recommendation/Requirements for Improvement:** work more word problems on projector walk around and monitor student progress. Make sure their on task, right page, etc. (start of lesson)

**Next Observation:** Sept 13-17

**Intern's Signature:** Nancy M. Miller        **Date:** Aug 30, 2004
**Evaluator's Signature:** Scott Ruediger      **Date:** Aug 30, 2004

ed 05/2003                                 TSU Publications 251-1025



COURSES > INTERNSHIP SEMINAR (JONES) 04FA > COMMUNICATIONS > DISCUSSION BOARDS > MESSAGE VIEW



---

**Current Forum:** Class Introductions
**Date:** Sat Sep 11, 2004 1:53 pm
**Author:** Miller, Nancy M. <nmmiller@aol.com>
**Subject:** Class Introduction

Modify

---

Hi all,

Nancy Miller here. I am a Collaborative Special Ed. major "in my own classroom" as well as an intern. I work at Houston County High School in Columbia. The school has a total of around 400 students. According to my mentor, there are approximately 24 teachers and interestingly we have determined that 1/4 are newly hired and another 1/4 are not tenured. Prior to becoming a teacher, I was a Realtor here in Dothan. High turn-over rates in Real Estate offices meant one thing. Can you guess what that is? If anyone wants to discuss this, feel free to email me.

Although I have a resource room, I spend very little time in it. I support 40+ student in grades 7th - 12th. A fabulous thing about a small school is that you get to know the students very quickly & the students all know who you are, too. At the beginning of the year when I went to check on the needs of the Special ed students, I would go into a classroom and everyone would say, "Hi, Mrs. Miller!" At that time, I only knew the Special Ed students by name but now I know most of regular students by name (because I asked them). I track about 6 different teachers' classes and regularly stay in 4 teacher's rooms during a typical day. Third block Math is the only class I stay in for the entire block because all of the students are special Ed students. This is also the only class I have an opportunity in which to "teach". She is terrific. However, I'm going vent a little - one teacher in particular has worksheets, quizzes &/or tests nearly everyday (and wants the Spec. Ed students out of "her room"). She intentionally embarrasses, humiliates not only the Spec. Ed kids but the Reg. Ed students and even embarrassed me in front of her class. Sometimes it's subtle and sometimes blatant. I know I will have to get some input from YOU, my colleagues, about this situation at a later date. My mentor & I have discussed this at great length and he even though he's been teaching for about 8 years he's at a loss for any suggestions that are diplomatic. He knows what he'd do but understands my dilemma.

Ok, let's move on. I have been married to my best friend, Terry, for 32 years (come December 2nd). It was love at first sight and we only knew each other less than 5 months before we were married. He is a retired Army Major with 23 + years of active duty service. We have lived all over the U.S but mostly in the South. He retired in 1994. Having been an enlisted Staff Sgt., Airborne, Drill Sgt. and an OCS graduate, made him highly qualified to teach JROTC. He was hired at Dothan High school before his official retirement date and has been there ever since. He was and is my inspiration for becoming a teacher. He has 100+ students during the course of a year, many of which are Special Ed. students. JROTC teaches students responsibility, self-esteem, self-reliance, integrity, pride, team work, and leadership (just to name a few). Most students excell in his classes because there is a lot of hands-on activities, critical thinking opportunities, enthusiasm, motivation, mentoring, genuine caring for the students, as well as discipline - and I don't necessarily mean "punishment type" discipline. JROTC is far from the "easy A" elective. Terry suggests that if they can succeed in his classes, they should succeed in other classes. Excellent point. Why don't they? It's clear to him. Is anyone interested in discussing s?

On a personal note we have 3 children, Jennifer, Quentin, & Justin. All 3 went or are going to UA. Jen is 30 and graduated m UA in Journalism. She was employed at the Enterprise Ledger for 3 1/2 years. She just quit so she could enroll at TUD obtain her Master's in Community Counseling (what she made is what the stats indicate a student without a high school loma would make& basically at the poverty level). My "boys" (25 & 24) are still plugging away, the younger in Chemical gineering & the elder in Exercise Science. Both are working full time. Four in college at the same time - Ouch !

In my spare time I make wedding cakes, stained glass windows, and my daughter & I own Felicity Tiaras (a wholesale siness). I have a degree in Equine Studies and love to train horses. It may sound really strange to most people but I think ni horses has given me a patience, sensitivity and an appreciation for teaching Special Ed students (but certainly applies ds, and voice without being able to get any verbal feedback. 99% of the time it is the rider's inability to communicate to horse what the rider wants the horse to do. Failure to appropriately communicate expectations can result in "bad avior", injury or even death. Me getting angry accomplishes absolutly nothing but more problems. Does this ring any s? Anyway, I'd really love to teach riding lessons again but at this point in time I have VERY LITTLE time. Over the years

Blackboard Learning System TM (Release 6)                                         Page 2 of 2

I was a stay at home Mom; I owned a cake decorating supply/bake shop, developed & taught cake decorating classes for Continuing Ed. at Wallace College, and was a "Mayor" at Fort Leavenworth, KS.

Well good heavens !!!  Dr. Jones should give everyone who reads this LOTS OF BONUS POINTS!!!!  I just turned 50 recently - can I use that as an excuse?

( Reply )

**Current Thread Detail:**
Class Introduction                   Miller, Nancy M.                    Sat Sep 11, 2004 1:53 pm

( OK )



DEFENDANT'S EXHIBIT NO. 11

Blackboard Learning System TM (Release 6)                                    Page 1 of 1



COURSES > INTERNSHIP SEMINAR (JONES) 04FA > COMMUNICATIONS > DISCUSSION BOARDS > MESSAGE VIEW

◄◄ Previous Message     Next Message ►►

**Current Forum:** Discussion #2: Surprises -- Due Sept. 5th-11th
**Date:** Sat Sep 11, 2004 2:52 pm
**Author:** Miller, Nancy M. <nmmiller@aol.com>
**Subject:** Surprises

Modify

Well I spent so much time writing & responding to the Introduction, that ISC is about to close.  My biggest surprise was the teacher I mentioned in my Introduction.  The disrespect for students and collegues alike floored me.  She has been teaching for over 15 years I believe.  Perhaps she is part of the turnover problem in the school.

I have a Resource Room but hardly spend time in it.  I am having to ease my way around the teachers because they are NOT happy with full inclusion.  Reality is that it will take time for them to want me to do any "co-teaching" etc.  Many don't even want the Special Ed teachers in their class because they think we see too much.  Teachers let the kids play cards "after they get their work done" etc. So we see that sort of thing and they are uncomfortable.

Reply

◄◄ Previous Message     Next Message ►►

**Current Thread Detail:**

| Surprises | Miller, Nancy M. | | Sat Sep 11, 2004 2:52 pm |

OK



DEFENDANT'S EXHIBIT NO. 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## Pam Parris

**From:** <NMMiller@aol.com>
**To:** <pparris@troyst.edu>
**Cc:** <sjones@troyst.edu>
**Sent:** Saturday, September 11, 2004 5:48 PM
**Subject:** Nancy Miller wk3

Hi Mrs. Parris & Dr. Jones,
The school week was only 2 days for me since I went to the PEPE workshop.  Nevertheless it was the worst week emotionally.  All of the students I work with are wonderful.  I have no disciplinary problems at all - not even with those who have behavior plans. Here is the good thing I had happen.  One student brought food & drink into the resource room after break when all 6 were sitting down to finish their test.  Teasingly I said, "We are not supposed to eat in the classroom. Are you trying to get me fired?"  She looked horrified and said "Oh no, Mrs. Miller! I love you!"  She immediately put everything away.

The thing that upsets me is the Science teacher continually embarrasses, belittles, and humiliates her students -especially the Special Ed. students.  In addition, she is now doing the same to me in front of her class (on several occasions). She seems to enjoy herself immensely.  I gave her a list of accommodations for the Special Ed students with Mental Retardation & Learning Disabilities (as I did for all of the teachers whose students I monitor).  While the others were appreciative because they had NEVER received anything like that before, she was aggravated because she said she'd been teaching alot longer than me. It's gone down hill from there. I have been ignoring her behavior but Paul Strange (my mentor) wants feedback from you, too.  He's at a loss as to how to handle the situation because it's one o    se darned if you do & darned if you don't.  Paul told me that Mr. Pitchford indicated to you that there was one teacher in particular who was not pleasant to work (it's her)with so he will be no help. I go to her class 2 times a day.   Please advise.
Thanks, Nancy

DEFENDANT'S
EXHIBIT

1                    DEFENDANT'S EXHIBIT NO. 13

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## Pam Parris

| | |
|---|---|
| **From:** | <NMMiller@aol.com> |
| **To:** | ""Pam Parris"" <pparris@troyst.edu> |
| **Sent:** | Monday, September 13, 2004 4:33 PM |
| **Subject:** | Re: Nancy Miller wk3 |

Mrs. Parris,
Paul went ahead and spoke to Mr. Pitchford and Mr. Pitchford brought the teacher in with Mr. Strange to discuss the problems. She immediately sent the items Mr. Pitchford told her I would need & asked her to be more cooperative. She seemed to respond.

To be on the safe side, I can meet with you on Sept. 27 closer to 4PM. It takes me 35 - 40 minutes and we can't leave the school until at least 3:10. Will this work for you?
Nancy

DEFENDANT'S EXHIBIT



DEFENDANT'S EXHIBIT NO. 14

Sept. 24, 2004
Mr. Pitchford,

      This memo is to inform you that this morning after I attended an IEP meeting for Ta Daishi Thornton (during 2nd BLK), Starla, the Psychometrist, in Paul Strange's presence asked me to sign 3 documents claiming that I was at IEP meetings. The students were Albert Turley (2 different documents) and for Jared Chandler. As you know, signing the documents when I was not present at a meeting is unlawful. You also know that this is not the first time I have been approached about illegally signing IEP documents. On August 11, 2004 at approximately 3:20 pm, Cathy Keasler approached me as I was leaving the campus and said we'd need to make up, sign, and date an IEP for Raven Shackleford - without having a meeting. I told her that first, as an Intern, I am not permitted to write or sign one if I have not attended a meeting and that I wouldn't sign one because it is against the law. I have informed Dr. Jones and Mrs. Parris of the situation and I am leaving the premises.

Nancy MIller

DEFENDANT'S
EXHIBIT

1                    D E F E N D A N T ' S   E X H I B I T   N O .   1 5
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

At approximately 2:45 on Friday, September 24, 2004, Mrs. Nancy Miller came to the central office. Mrs. Miller had an envelope that she wanted to leave for Mr. Andrews. She also requested to talk to me in my office.

Mrs. Miller and I talked at length about her concerns on various situations at HCHS. She expressed unhappiness over these incidents, culminating with the fact that she left the campus of HCHS today about 11:30.

Mrs. Miller expressed the desire to talk with Mr. Andrews before returning to school. I contacted Mr. Andrews and he returned to the central office around 3:45. At this time, Mr. Andrews and I both met with Mrs. Miller about her concerns. As our conversation was ending, Mr. Andrews asked Mrs. Miller how she felt about returning to school on Monday. Mrs. Miller stated she would not feel comfortable returning to school until Mr. Andrews had spoken with Mrs. Pam Paris, Advisor for TSUD. Mr. Andrews instructed Mrs. Miller that if this was her wish, he would contact her Monday morning after speaking with Mrs. Paris.

*Virginia A. Singletary*

DEFENDANT'S EXHIBIT

```
 1                    DEFENDANT'S EXHIBIT NO. 16
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Concerns Expressed by Mrs. Nancy Miller

1) Mr. Paul Strange – Mrs. Miller's "paid mentor" has made regular comments to Mrs. Pam Paris, TSUD Advisor. Mrs. Miller stated that she is in jeopardy of failing her internship because of Mr. Strange's comments. She referred several times to Mr. Strange as her "paid mentor". Mrs. Miller stated she had a meeting with Mrs. Paris on Wednesday, September 22, 2004 at which time Mrs. Paris instructed her to request a meeting with Mr. Tim Pitchford, Principal at Houston County High School to "make amends".

2) Mrs. Miller stated that in August 2004, Mrs. Cathy Keasler, counselor at Houston County High School, asked her to do an IEP on a student at HCHS who did not have an IEP.

3) Mrs. Miller stated that two weeks ago she asked for an appointment with Mr. Pitchford and was told by Ms. Ham that his calendar would have to be checked. Mrs. Miller did not hear from Mr. Pitchford. She went on September 23, 2004 again, to make an appointment. Mr. Pitchford talked to Mrs. Miller on September 24, 2004 and scheduled a 1:20 appointment. Mrs. Miller reports that Mr. Pitchford has not been very cordial.

4) Met on 9/24/04 for an IEP meeting on one student. Later Mrs. Miller was approached by the psychometrist and reportedly asked to sign three additional IEP documents of students even though she was not in attendance at the meetings. Mrs. Miller stated Mrs. Keasler had asked her earlier to sign IEP documents when not in attendance. She further stated that Mr. Strange was approving of her signing the 3 documents presented by the psychometrist, even though he knew it was wrong.

5) Scott Stevens, Assistance Principal, according to Mrs. Miller, was very unprofessional at a meeting and had to walk out because he was doing "a belly laugh so hard" about her concerns over signing papers.

6) Mr. Pitchford has had Mrs. Miller, according to her, "doing a notebook" to verify her activities.

7) Mrs. Miller stated today that she had to leave at 11:30 because she felt so uncomfortable with the situations. She stated that she believes the psychometrist was part of a sabotage plan to set Mrs. Miller up for failure and that the psychometrist holds meetings on students without sending out notices.

8) Mrs. Miller reports that regular program teachers ridicule students and make rude comments about students such as "student failed because he did not try" or "failed because he is lazy". Mrs. Miller stated that as a child she had been a victim of ridicule because of her large chest, so she could empathize with the students.

9) Mrs. Miller reported that the mentor, Mr. Paul Strange, had eavesdropped on her conversations with Dr. Rutegers from TSUD and reported back to Mr. Pitchford.

DEFENDANT'S EXHIBIT

1                    DEFENDANT'S EXHIBIT NO. 17

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



# Houston County Schools

404 West Washington St.
P.O. Drawer 1688
Dothan, AL 36302
(334) 792-8331

Kenneth Lord, Superintendent

Mrs. Pam Parris
Director of Student Interns
Troy University – Dothan
500 University Drive
Dothan, Alabama 36303

Dear Mrs. Parris:

I am writing to express some concerns regarding a non-traditional intern, Nancy Miller,
at Houston County High School.

After discussions with Mr. Tim Pitchford, Principal, and Mr. Paul Strange, supervising
teacher, the concerns are as following:

    A.    Following school procedures when leaving campus
    B.    Working with peer teachers
    C.    Developing positive teacher-student relationships
    D.    Developing a better understanding of the special education process and
          required forms (eligibility meeting and referral meeting)

As always, we appreciate you and Troy University and look forward to continue working
with you to develop excellent teachers.

Thanks,

R J Andrews,
Federal Programs Coordinator



```
 1                    DEFENDANT'S EXHIBIT NO. 18
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Houston County High School**
**P.O. Box 519**
**Columbia, Alabama 36319**
**696-2221 or 696-4515**

To: Pam Parris / Troy University Dothan

From: Houston County High School

The following is a record of incidences that have occurred here at school involving Mrs. Nancy Miller.

(1) Mrs. Miller left the school campus without informing administrative personnel. She did not return until the next school day.

(2) Mrs. Miller accused Paul Strange of entering her locked filing cabinet and placing an IEP in a student folder. Mrs. Miller claims it was an IEP written without her knowledge. Mr. Strange and Mrs. Miller had written the IEP in her room approximately one week earlier. Mrs. Miller stated she had no recollection of that event.

(3) Mrs. Miller has difficulty in communicating with faculty members.

(4) Mrs. Miller questioned the lawfulness of the school systems inclusion policies.

(5) Some students have requested that Mrs. Miller not be their inclusion teacher.

(6) Classroom teachers reported that Mrs. Miller has been upset and crying during class time.

(7) Office staff members reported that Mrs. Miller was upset and crying in the office lobby during school hours.

(8) Not following suggestions provided by Mr. Strange as related to the resource room.

(9) Mrs. Miller told a classroom teacher, "I don't like being here any more than you do, but I have to be in here a certain number of hours". This is in response to the classroom teacher telling her that she could leave the room because the lesson was over. Mrs. Miller said this in front of the students in the class.

*Stacey Ezell*
*Paul Strange*

DEFENDANT'S EXHIBIT



1              DEFENDANT'S EXHIBIT NO. 19
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**am Parris**

| | |
|---|---|
| **From:** | <NMMiller@aol.com> |
| **To:** | <sjones@troyst.edu> |
| **Cc:** | <pparris@troyst.edu>; <gruediger@troyst.edu>; <nmmiller@aol.com>; <jrotc250924@aol.com> |
| **Sent:** | Sunday, September 26, 2004 1:08 PM |
| **Subject:** | Nancy Miller 9/24 |

Dr. Jones,

I left phone messages for you, Mrs. Parris, and Dr. Ruediger at TSUD on Friday morning and Saturday evening.

During my job interview, Mr. Andrews told me to come to him with any problems I had. I met him on Friday to discuss the legal and ethical issues I've been dealing with.

If you wish to contact me on Monday, you can reach me at HCHS.

Nancy Miller


DEFENDANT'S EXHIBIT



DEFENDANT'S EXHIBIT NO. 20



# College of Education
# Internship Observation

Circle # of Observation    1    (2)    3    4    5

Student's Name: _Nancy Miller_    Date: _9-30-04_
Cooperating Teacher: _Ms. Strange_    Grade/Subject: _10th / Math_
School: _Houston County H.S._    University Supervisor: _Rucoiger_

Coding Scale:    (5) Excellent, Consistent Performance
(4) Above Average performance
(3) Average Performance

(2) Minimally acceptable performance
(1) Unsatisfactory performance
(NO) Not Observed

| Competency Observed<br>The Intern: | Score |
|---|---|
| 1. Prepares and employs developmentally appropriate lessons and resources including technology _overhead_. | 3 |
| 2. Planning skills and organization of materials _had overheads written prior to using_. | 3 |
| 3. Presents the lesson: | |
| a. Introduction — _what, why_ _behavioral expectations_ | a.(2) |
| b. Development — _handout + rules - Argument of concert_ | b.(2) |
| c. Closure — _Bell ring + ?_ | c.(2) |
| d. Evaluation | d. NO |
| ...mulate interest and growth in reading and an appreciation for reading in the content area by using a variety of teaching strategies _homework activity_ | 3. |
| Provides practice and review | 3 |
| Demonstrates knowledge of content | 3 |
| Transitions are smooth and appropriate | (2) |
| Interacts well with students | 3 |
| Monitors student performance _asking questions to class_ | 3 |
| Provides students with feedback | 3 |
| Manages class behavior | (2) |
| Maintains student involvement | (2) |
| Manages class time | (2) |
| Speaks standard, clear English | 3 |
| Writes standard, clear English | 3 |
| Exhibits a professional demeanor | (1) |
| Evidence of reflective thinking | (2) |
| Demonstrates a positive attitude and enthusiasm for teaching | 1 |
| Demonstrates reliability | (1) |

Regular Education Classroom.
~~16 students~~ 16 students.

Why are students sitting where they are? Us vs Them.

Create a context. Students head down.

Transitions within lesson. Cues. Prompts. Model desired behavior. p. 230 on board.

Walk around the room to make sure students are ready to begin. Copy material from overhead.

Use of KWL and review. Chart. Read

How can you make lesson content more concrete and functional to students?

Continue to refine Direct Instruction Teaching Sequence:
Advance Organizer
Direct Instruction
Guided Practice
Independent Practice
Summary / Evaluation

Recommendation/Requirements for Improvement:
_...ssional Demeanor. Reliability._
...e of Next Observation: _TBA._

Intern's Signature _Nancy D. Miller_    Date: _30. Sept. 04_
Evaluator's Signature: _____    Date: _30 Sept. 04_

...sed 05/2003

DEFENDANT'S EXHIBIT

1          DEFENDANT'S EXHIBIT NO. 21

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Nancy Miller Debriefing
September 30, 2004
Troy University-Dothan
Room 312
3:10-4:10

Dr. Lumpkin was asked to attend the meeting.

I began the meeting by asking Ms. Miller to discuss her relationship with her supervisor and principal. She indicated that she was interacting well with her students and other teachers. She stated, "I am getting along well with Mr. Strange". She was asked why she left the school campus the previous week during school hours. Ms. Miller stated that she felt that she was required to do something in which she did not feel was appropriate. Dr. Lumpkin and I stressed the importance of demonstrating professional behavior and the correct protocol to follow when difficulties arise. She apologized for leaving the school campus. I further asked Ms. Miller if at any other times during her internship if she had demonstrated inappropriate professional behavior. After some hesitation she indicated that she had not. She later indicated that she could understand how her behavior may have been interpreted as unprofessional.

I encouraged her to discuss lesson planning, use of resources, and general impression of the asm. I reviewed the observation form with her and discussed teaching behaviors. Specific areas included: teacher centered vs student centered classroom, how to create a context at the beginning of a lesson, academic engaged time, direct instruction strategies, use of a K W L Chart, and classroom organization. Ms. Miller indicated that she understood the suggestions after asking specific questions. Dr. Lumpkin suggested a variety of additional ideas and encouraged Ms. Miller to videotape herself teaching.

Dr. Ruediger



DEFENDANT'S EXHIBIT



DEFENDANT'S EXHIBIT NO. 22



Report of Observation for Nancy Miller
Visit #2  Sept.30, 2004
October 1, 2004

        I respectfully disagree with the results of the observation by Dr.
Ruediger on Thursday, 9/30/2004.  After the observation, I was asked by Dr.
Ruediger to go to TSUD for a conference to discuss the observation with along
with Dr. Lumpkin.  I arrived at TSUD at approximately 2:15p.m.  Dr. Ruediger, in
the presence of Dr. Lumpkin, asked me questions concerning events leading up to
and including meetings held on Friday, 9/24 with Mr. Riley Andrews and Monday,
9/27 with Mrs. Parris and Principal Tim Pitchford.  Dr. Ruediger was not in
attendance at either meeting.  The questions Dr. Ruediger asked were unrelated
to the actual observation Dr. Ruediger performed at HCHS.  Dr. Ruediger
indicated to me that the ratings of ones and twos I received in areas 16, 17,
18, 19 were a reflection of the events and meetings on September 24 and 27 and
not what he actually observed during the lesson I taught.  I believe that the
rating of twos in areas 3.a., 3.b., 3.c. 7., 11., 12., 13. are also a reflection
of September 24 and 27 and unjustified.  At the end of the conference, Dr.
Ruediger asked me to sign the observation form.  I specifically asked that Dr.
Ruediger indicate (in writing on the observation form) that items 16, 17, 18,
and 19 reflected the events on 9/24 and 9/27.  He did not do so."  Dr. Lumpkin
indicated that signing the form only acknowledged the discussion of the rating,
not that I agreed with the rating.

        I would like to address areas 16, 17, 18, & 19.  Starting on 8/11/2004 I
have been asked repeatedly to write, pre-date, and sign IEPs without parental
notification and IEP meetings which is a violation federal laws.  I explained to
the person that I am an intern and that the contract between Houston County
Schools and TSUD does not permit me to write IEPs.  I informed my mentor, Paul
Strange of the situation.  I also asked for advice from Dr. Ruediger about other
areas of non-compliance on August 26, 2004 after my first observation.  His
response was that if I were not employed he would pull me from my internship
placement.  His recommendation was to advocate for the children by encouraging
my mentor to arrange new IEP meetings to reflect the new policy of full
inclusion.  My mentor, Mr. Strange, addressed Dr. Ruediger's concerns to
Principal Pitchford.  According to Dr. Ruediger and Mrs. Parris, I have caused
dissention among the faculty.  I believe this dissention was caused by reporting
the request for me to violate state and federal laws as well as asking my
mentor's and the Principal's assistance in obtaining the needed/required new
IEPs and accommodations.  Items such as lecture notes and modified tests are
vital IEP accommodations and required in order to meet the needs of the special
education students and in order to be in compliance with state and federal laws.
After eight weeks, some students still do not have IEPs.  While I am considered
an intern, I am also employed by the Houston County School System.  It would be
unprofessional of me to violate laws and **not** to request assistance in obtaining
required IEPs and accommodations for the special education students.

        On 9/24/04 I was again asked to violate state and federal laws.  I left
phone messages (between 10-11am on Sept. 24) for Dr. Jones, Mrs. Parris, and Dr.
Ruediger asking for advice.  No one returned my call.  When I was hired by Mr.
Andrews, he specifically said to go to him if I had any concerns.  I notified my
mentor, my cooperating teacher, and wrote Mr. Pitchford a memo concerning the
requests for me to violate state and federal laws, and met with Mr. Andrews at
the Houston County Schools' Central Office.  I love teaching special education
students and I am committed to be the most professional teacher possible.  I
believe in integrity and standing up for what is right.  It is my duty and


DEFENDANT'S
EXHIBIT

obligation to advocate for my special education students.  It would be
unprofessional of me NOT to do so.

Concerning 3.a., 3.b., 3.c., 7., 11., 12., & 13.
     #3.a., #3.b.    The math class is very basic and includes students with
special needs and those at risk. The lesson I used was from the AGS Consumer
Math Book that was selected by HCHS for special education students working
toward a Certificate of Attendance and AL Occupational Diploma.  I also
consulted other available textbooks that include financial planning lessons
keeping in mind the three students who do not receive special education
services.  In planning the lesson, I addressed the special education students'
IEP goals and objectives concerning basic financial planning including
determining income and expenses and learning how to prepare a budget.

     An activity (a questionaire) handed out the previous day determined that
thirteen out of fifteen students did not know the term budget or it's use nor
did they know how to determine income.  I specifically introduced the lesson
using a KWL chart and specifically had students discuss the definitions of the
terms associated with budgets and income.  The students also discussed why
budgets are important.  I also indicted that the students would learn step-by-
step how to prepare a budget.  I explained that the homework assignment
(income/spending log handout) would provide them the opportunity to keep track
of their income and spending habits in order to prepare a budget.
Teachers have advised me that due to budget constraints, the school does not
have enough books for all of the students.  All students in all of the
collaborative classes are asked to copy problems/questions on their own paper.
If the assignment is not finished during class time, students are given the
opportunity to finish the assignment as homework.  While copying the assignment
on paper may not be best practice, this is the way I have been instructed by my
cooperating teacher.  I did not want to violate copyright laws by photocopying
the lesson and distributing it to the students.

     #11. & #12. The students were sitting in the seats assigned by my
cooperating teacher and I experienced no discipline problems during the lesson.
You indicated that a student put his head down.  When the student put his head
down, I immediately re-directed his attention to the lesson by asking him
questions about the lesson - which he answered correctly each time. He remained
on task as did the other students.

#3.c., #7., & #13.  Time management is something which with interns as well as
certified teachers struggle.  During the third block class, we are interrupted
by the thirty minute lunch break, so students are hungry.  When they return,
some students have a harder time re-focusing and staying on task.  I will
continue to work on time management skills and I appreciate recommendations from
you as to how I can improve my teaching.



## Pam Parris

**From:**      <NMMiller@aol.com>
**To:**        <sjones@troyst.edu>
**Cc:**        <pparris@troyst.edu>; <nmmiller@aol.com>
**Sent:**      Friday, October 01, 2004 3:29 PM
**Subject:**   Nancy Miller

This has been a rough week and fortunately it is behind me. Mr. Strange & I spoke this morning. We plan to get together on Monday morning to talk more. We both regret the events of the week and look forward to meeting again. I will continue to reflect on the situation and strive to make this a successful internship.

The students were excited about the game and the fall break next week. All of the teachers at HCHS volunteer to sell football tickets one night during the season. My husband & I will be selling tickets along with a couple of other teachers at tonight's game. It should be fun.



DEFENDANT'S
EXHIBIT



1                    DEFENDANT'S EXHIBIT NO. 25
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## 'am Parris

**From:**     "Cynthia Lumpkin" <clumpkin@troyst.edu>
**To:**        "Pam Parris" <pparris@troyst.edu>; "Greg Ruediger" <gruediger@troyst.edu>
**Sent:**     Wednesday, October 06, 2004 12:15 PM
**Subject:**  debriefing with Nancy Miller

As requested:

I met with Dr. Greg Ruediger and Ms. Nancy Miller on Thursday, Sept. 30 at 3:10 pm. Dr. Ruediger had made an internship visit and observation with Ms. Miller that day.

Dr. Ruediger began the session by asking Ms. Miller to discuss her relationships with her supervisor, principal, etc. and specifically asked her to explain her leaving campus the previous week during school hours. Ms. Miller told what happened, explained that she now understood that she should always speak with the principal when pressures arise. She did indicate that she has apologized for the leaving and apologized to Dr. Ruediger. She explained that she is learning and that she did learn from the incident. Ms. Miller stated that she views herself as an intern who is learning.

She thought Mr. Pitchford would decide whether she passed or failed her internship. We explained to her the TSUD decides that, but Mr. Pitchford decides if she is allowed in his school. She accepted that. Dr. Ruediger was asked by the school to ask Ms. Miller to enter her password at school so that IEP's could be completed on students. She was hesitant to enter her last four digits of her SSN. Once it was explained to her that her password could be changed once she entered the system, she said she would take care of the situation the next morning.

Dr Ruediger reviewed the observation form with her with his assigned markings. He encouraged her to talk about h   inking, decision-making, and reflection on the lesson. He had scored her teaching with 3's and 2's with a "1" on professional behavior. He and I both offered several suggestions for improvement in teaching. Ms. Miller asked about the "1" on professionalism; Dr. Ruediger explained that stemmed from the leaving incident. I explained that she would receive a letter from the internship office alerting her to the need to improve in the areas where she received "1" and "2's". Ms. Miller said she expects all to go well from here on out. I left to attend class at 4:10pm.

Cynthia Lumpkin

DEFENDANT'S EXHIBIT

1          DEFENDANT'S EXHIBIT NO. 26

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



**TROY STATE UNIVERSITY DOTHAN**



P. O. Box 8368
Dothan, Alabama 36304-0368
(334) 983-6556

October 18, 2004

Houston County Schools
Mr. Kenneth Lord
P. O. Drawer 1688
Dothan, Alabama  36302

Dear Mr. Lord:

Nancy Miller, a Troy University Dothan Campus student, had been placed as an intern at Houston County High School during the Fall semester. The purpose of this letter is to inform you that her internship was terminated effective October 14, 2004. Ms. Miller was notified of this decision during a meeting at the University on October 14, 2004.  Ms. Miller will not be eligible for graduation at the end of this semester.

We value the continued support of Houston County Schools for the programs at Troy University Dothan.  We look forward to working together again in the future.

Sincerely,

Pamela G. Parris
Pamela G. Parris
Director, Professional Internship Programs

PGP/pgp

cc:  Mr. Tim Pitchford, Principal, Houston County High School
    Dr. Sandra Lee Jones, Dean, College of Education

DEFENDANT'S
EXHIBIT
26



DEFENDANT'S EXHIBIT NO. 27

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Nancy M. Miller
100 Oak Manor Court
Midland City, AL 36350
October 18, 2004


Dr. Sandra Jones
Troy University Dothan
500 University Dr.
Dothan, AL 36303

Dear Dr. Jones,

Last week Mrs. Parris and Dr. Ruediger indicated to my husband and me that I have been administratively withdrawn from my Internship at Houston County High School.  I would like to continue to pursue my certification as a Collaborative Special Education teacher.   Contingent upon being released from my employment contract with the Houston County School System, I would prefer to begin another internship starting in the Spring 2005 Semester. (January 2005).  However, if I am not released from my employment contract, I would like the option of another internship opportunity at a later date -- preferably Fall 2005.

Thank You,

*Nancy M. Miller*

Nancy M. Miller

DEFENDANT'S
EXHIBIT



DEFENDANT'S EXHIBIT NO. 28



# Houston County Schools

404 West Washington St.
P.O. Drawer 1688
Dothan, AL 36302
(334) 792-8331

Kenneth Lord, Superintendent

HAND-DELIVERY

October 19, 2004

Ms. Nancy Miller

Dear Ms. Miller:

We are informed by letter from Pamela G. Parris, Director of Professional Internship Programs at Troy University of Dothan, that your internship was terminated effective October 14, 2004. The legal effect of this termination by Troy University is to terminate your Employment Internship Agreement with the Houston County Schools.

I am sorry is has become necessary to write you this letter. However, because you refuse to leave the campus of Houston County High School, this letter is necessary to terminate you as an intern teacher at Houston County High School and direct you to leave and not return to the campus.

Sincerely,

HOUSTON COUNTY BOARD OF EDUCATION

BY: _Kenneth Lord_
    Kenneth Lord, Superintendent

KL/nw

DEFENDANT'S EXHIBIT 27



DEFENDANT'S EXHIBIT NO. 29

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



# COLLEGE OF EDUCATION

*Amy Pr 7*
*Eng 52*

# PROFESSIONAL INTERNSHIP PROGRAM HANDBOOK

Professional Internship Office
P. O. Box 8368,
Dothan, Alabama  36304
(334) 983-6556, ext. 361
pparris@tsud.edu

*troyst.edu*

DEFENDANT'S
EXHIBIT
29
PENGAD-Bayonne, N.J.

# TABLE OF CONTENTS

College of Education Philosophy & Ethics Statement ... 1

Prerequisites ... 2

Placement Procedures ... 3-4

Orientation, Pre-registration and Certification ... 5-6

Purpose and General Description of Internship ... 6-9

Successful Internship ... 9

Role Description of Teacher ... 10

Attendance and Evaluation ... 11

Responsibilities of Cooperating Teachers ... 12-13

Competencies Desirable for Working with Interns ... 14-16

Explanation of Forms for the Cooperating Teacher ... 17

Explanation of Evaluation Coding ... 18

Observation (evaluation) ... 19

Explanation of Competencies ... 20-22

Equal Employment Opportunity Policy (EEO)/Americans with Disabilities Act (ADA) ... 23

**Appendix: Forms** ... 24

Internship Checklist ... 25-26

Report of Pre-Internship Visitation ... 27

Internship Teaching Schedule ... 28-29

Lesson Plan Format ... 30

Secondary Lesson Plan Short Form ... 31

ECE/ELE/SPE Short Form Lesson Plan ... 32

# TABLE OF CONTENTS

Report of Internship                                                          33

Attendance for Intern                                                          34

Summary Report for Internship                                              35

Summary Evaluation of Internship                                           36

Intern Evaluation of University Supervisor                                 37

Agreement to Serve as University Supervisor                              38

Agreement to Serve as Cooperating Teacher                               39

Cooperating Teacher Evaluation of University Supervisor              40

University Supervisor Evaluation of Cooperating Teacher             41

Evaluation of Cooperating Teacher to be Completed by the Intern   42

Agreement to Serve as Professional Intern                              43

Indemnification and Release                                                44

Intern Demographics                                                         45

# College of Education
# Professional Internship Program
# Troy University Dothan

## PHILOSOPHY

Clinical field-based experiences are an indispensable component of the Teacher Education Program at Troy University Dothan. The Professional Internship Program, the culminating clinical field-based experience of the Teacher Education Program, is a special experience with special objectives and outcomes. It is a period of time in which the intern, as a teacher, learns about teaching, himself/herself, learners, subject matter/content, classrooms, social and institutional contexts, discipline, accountability, and learning. It is the culminating experience that allows the intern to blend the theory and ideas with actual classroom practice in a supervised setting. The experience provides the intern with the opportunity to "crystallize" what he/she has learned by stimulating GROWTH through EXPERIENCE and REFLECTON. The goal of the College of Education at Troy University Dothan is to graduate teachers who make instructional decisions that are based on a sound knowledge base and are appropriate to the given context--professional educators who are *informed, reflective, decision-makers*.

## ETHICS STATEMENT

We, as members of the professional education unit within the College of Education of Troy University Dothan, affirm that teaching is one of the most important career choices and that the profession of teaching is a lofty one.

We believe that ethical, moral, and value-driven behavior begins where the legal provisions governing conduct terminate. Therefore, we believe that the students of the Teacher Education Program possess the highest standards of the teaching profession: *integrity, honesty, and ethical behavior*. Consequently, as members of the profession, students act or refrain from action, not only because of legal constraints, but because of the ideals that under-gird the true meaning of professionalism.

(TSUD would like to thank the Association of School, College and University Staffing for allowing us to use some of the phrasing from the 1993 AASCUS Annual.)

# THE PROFESSIONAL INTERNSHIP PROGRAM

The Professional Internship Program is the culminating, clinical field-based experience for students in the College of Education. The internship is an important college experience for the prospective teacher and encompasses a full-time teaching assignment. The Professional Internship Program provides the student with the opportunity to conduct classes and assume the role of a teacher while receiving supervision from a classroom teacher and a university supervisor.

## PREREQUISITES FOR INTERNSHIP
### (These must be met prior to the Internship.)

1.  Students must earn a minimum of 120 clock hours of Professional Laboratory Experiences by the published deadline.
    * within three years of internship in approved schools and approved activities
    * 50 hours will be school related and will be earned in conjunction with course and program requirements
    * 35 hours of professional activities
    * 35 hours of community activities in at least two different activities
    * verified on the Report of Professional Laboratory Experience card
    * will be reviewed with the Director of Internship upon application for Internship
    * completed PLE card due prior to internship

2.  Students must be admitted to the Teacher Education Program.

3.  Students must meet specific GPA requirements.

    Undergraduate students must maintain:
    * an overall GPA of 2.75 (4.0 scale)
    * a professional course work GPA of at least 2.75 (4.0 scale)
    * a teaching field GPA of at least 2.75 (4.0 scale)
    (as computed by the Director of Professional Internship)

    Alternative Class A students must maintain graduate status with at least a 3.0 GPA (4.0 scale).

4.  All course work must be completed prior to the internship semester including undergraduate general studies. EDU 4454/5554, Internship Seminar, will be required during internship.

5.  The Start of School Clinical Laboratory Experience (S.O.S.) must be completed during the fall of the year prior to the year of internship.

6.  All students must maintain current professional liability coverage with evidence of coverage on file in the Professional Internship Office.

7.  A student who earns a D or an F (including WF or FA) in any professional or teaching field courses will be required to retake the course, and the grade will continue to count in the computation of the student's GPA. There is no forgiveness policy for Professional Education or Teaching Field courses.

8.  A student must have a "C" or better in ENG 1101 and ENG 1102.

9.  A student who earns a D or an F in any math general studies course (Area III: MTH 1102, MTH 1112, MTH 1125 and Area V math elective as required by your program) will be required to retake the course(s).

NOTE: You will not be permitted to schedule any course during the semester of internship except for EDU 4454/5554, Internship Seminar. Internship is the culminating activity of your program. Internship is a full-time assignment for a minimum of 14 consecutive weeks and 485 clock hours.

Please bring this form with you when you have your conference with the Director of Professional Internship Program, Room 303A, Adams Hall. Contact the Professional Internship Office for an appointment.

10. Students must be recommended by three full-time faculty members from TSUD.

Students must have passed either the Alabama Basic Skills Test or all three parts of the **Alabama Prospective Teacher Testing Program** prior to the internship semester.

# PLACEMENT PROCEDURES

All students seeking admission to the Professional Internship Program must file an Internship Application package with the office of the Director, Professional Internship Program, 2 terms prior to the internship semester. Components of the Internship Application are:

1.  INTENT TO INTERN card: The specific card for the student's major must be completed.

2.  AUTOBIOGRAPHY: Each student will write an autobiography which will serve as the student's introduction to the school personnel. The autobiography should be approximately one page, typed and doubled spaced. This autobiography will be forwarded to the requested school system and should contain information which would be appropriate for a general audience and a **brief statement** of the student's philosophy of education.

3.  FACULTY RECOMMENDATIONS: Students must request recommendations from three full-time TSUD faculty. Recommendations may not be requested from part-time faculty or staff. One of the recommendations must be from the student's College of Education advisor and a second from a professor in the student's major field of study. The third recommendation must come from another member of the College of Education faculty. Recommendations are due the semester prior to internship. *Students who have received any reservations from faculty on TEP recommendations or Internship recommendations must meet with the TEP Committee prior to the semester of internship.*

4.  INTERNSHIP APPLICATION: The student must read, sign, and date the form which states the remaining requirements to be completed prior to the internship. The application also asks three questions concerning certification in other states and felony/misdemeanor charges which appear on the Alabama State Department of Education certification application. This information will be shared with the superintendents who request it.

5.  INTENT TO GRADUATE: It is the student's responsibility to contact the Registrar's Office to complete the Intent to Graduate before the deadline. Failure to complete the Intent to Graduate prior to the deadline may delay graduation and application for certification.

6.  END OF PROGRAM EXAMS: Students are required to take the Senior Exit Exam (undergraduate students) or Comprehensive Examination (graduate students) the term prior to the internship semester. Contact the College of Education Office, Room 300, regarding these exams. The Alabama State Department of Education requires each student to satisfactorily complete the end of the program examination to be recommended for certification.

7.    ALABAMA PROSPECTIVE TEACHER TEST or ALABAMA BASIC
SKILLS TEST – student must have taken and passed all parts of
the APTT or ABST prior to the internship semester.

The Internship Application Packages are due in the office of the Director of
the Professional Internship Program by the specified deadline each term.
Deadlines will be posted on the Professional Internship Office's bulletin board.
Applications which are not received by the established deadline **will not be
accepted**.

The Director will then notify the superintendent of the school system in
which placement for the intern is being sought.  The Director will request
placement of the intern with a Cooperating Teacher who meets the following
criteria:

1.    has a Master's degree in the area(s) for which the intern is seeking
certification **OR** meets the requirements for the waiver for the Master's
degree;
2.    has at least three years of successful teaching experience in the system;
3.    is recommended by the superintendent as having the competencies of an
effective cooperating teacher.

The Director will notify the intern of the placement at the Internship
Orientation Meeting.  All placements will be handled directly by the Director's
office.  Students are not permitted to arrange their own placement.
Internships must be completed in the areas and grade levels for which the
student will be certified.  **The student is not permitted to teach out of field
under any circumstances**.  For example, a biology major cannot teach in a
chemistry classroom.

Internship placements will be in the following grade levels:

| | |
|---|---|
| Early Childhood Education majors | grades P-3 |
| Elementary Education majors | grades K-6 |
| Early Childhood/Elementary Education majors | grades P-6 |
| Secondary Education majors | grades 6-12 in their teaching field |
| Special Education majors | grades K-6 or 6-12 |

# PRE-INTERNSHIP ORIENTATION MEETING

All interns are required to attend a meeting during the term prior to the internship term. For example, if a student plans to intern during the fall semester, the student must attend this meeting during the summer term. At this meeting, the intern must complete the following:

1. Agreement to Serve as a Professional Intern (page 43)
2. Indemnification and Waiver Form (page 44)
3. Demographic and Intern Information Form (page 45)

Attendance at the orientation meeting will assist interns in understanding the procedures to be followed during the internship and the format for documentation of internship responsibilities.

# PREREGISTRATION FOR INTERNSHIP

All students who will be interning must pre-register for the internship. Students failing to pre-register will be removed from the internship program. Students are to meet with their advisors prior to pre-registration to determine if all of the prerequisites have been met. Students should refer to the catalog for correct internship course numbers, course names, course descriptions, and credit hours. **Students will pre-register with the Director of Professional Internship after advisor advisement.**

STUDENTS ENROLLED IN THE PROFESSIONAL INTERNSHIP PROGRAM MAY NOT BE ENROLLED IN ANY OTHER COURSEWORK OTHER THAN INTERNSHIP SEMINAR unless they have written acknowledgment from the Dean of the College of Education that they are eligible for a waiver of this rule. Application must be made in writing prior to advisement week for the term in which the student will intern. Students may not simultaneously enroll in internship and course work to raise their GPA or replace a course in which they received a D or an F. All course work must be completed prior to internship.

# CERTIFICATION

Applications for Alabama certification will be provided and discussed in your internship seminar course. All applicants for initial certification will be fingerprinted and a background check will be conducted by the Alabama Bureau of Investigations before the teaching certificate is issued.

Students who can answer yes to any of the following questions need to see the Certification Officer as soon as possible to determine the necessary paperwork which will be required by the Alabama State Department of Education:

1. Have you ever had a teacher's certificate/license revoked, suspended, or denied; or have you voluntarily relinquished a certificate/license (allowing a certificate to expire does not apply)? If you are applying from out-of-state and you answer "yes", no action will be taken on your application until the certificate/license has been reinstated by the originating state.

2. Is there any action pending against your certificate/license or application in another state? If "yes", name the state and/or issuing authority and explain the circumstances.

3. Have you ever been arrested, convicted of, or entered a plea of no contest to a felony or misdemeanor other than a minor traffic violation? If you answer "yes", please provide details of the conviction including the date and place of conviction and submit court certified copies of the judgment, conviction, and sentencing. A "yes" answer will not automatically result in a non-issuance but may result in a request for additional information.

It is the student's responsibility to complete the necessary certification paperwork and return the forms to the College of Education for processing. Certification paperwork is processed *once* per term for all College of Education students.

Application for certification in other states must be obtained from the appropriate state agency. The certification officer can supply the necessary addresses.

## THE INTERNSHIP

### Purpose of the Internship

The experiences of the Professional Internship Program offer the intern the opportunity to teach while receiving evaluative feedback and support from the university supervisor, the cooperating teacher, and the principal. The purpose of the internship is to culminate the preparatory program of the student with a viable, worthwhile experience in the public schools.

### General Description

As an intern, the student is assigned to one or more cooperating teacher(s) in a public school. The intern is expected to realize that experiences will vary from school to school and from classroom to classroom; however, the schools within the service region of TSUD that participate in the program share a general common philosophy regarding the teaching role. The intern is expected to inform the Director of the Professional Internship Office if he/she believes the internship placement to be one that does not reflect the general philosophy of Troy University Dothan.

A general description of the internship is as follows:

1. *The intern's first contact with the school consists of a pre-internship visit with the cooperating teacher(s) and cooperating principal.* The visit is intended to acquaint the intern with the school personnel and to begin preparation for the intern's assignment(s). The visit is to be documented on the appropriate form and submitted to the Director of the Professional Internship Program prior to the first day of internship. See the appendix at the end of this booklet for the appropriate form (page 27).

2. The first phase of internship consists of *observation.* The observation period allows the intern to become more acquainted with the classroom procedures, the students, and the school program. Observation of learners and procedures affords the intern an opportunity to recognize the students; for ensuring a proper learning environment; and to learn appropriate classroom management strategies. Observation also allows the intern time to focus attention to the teaching/learning styles and behaviors of the teacher and students.

3. As the intern observes, he/she gradually begins _participating_ in classroom activities and the mechanics of teaching. Any time the intern assists the cooperating teacher in delivering a lesson plan, the intern is participating. In addition, any time the intern is involved in regular or routine activities of the school day, the intern is participating.

4. The next phase of the internship is the _teaching_ phase. At any time the intern delivers a lesson that they have written, the intern is teaching. The teaching time that occurs before the intern begins teaching all day does not include any time other than the _actual lesson_.

   - Secondary education majors count teaching hours starting with the beginning of the period and ending with the period.
   - All other majors start counting teaching time at the beginning of the prepared lesson and stop at the end of the lesson.

Underline Teaching all day

   - Count the teaching hours from the time you sign in that day until you sign out in the afternoon. This only applies to the twenty days of all day teaching.

The intern is responsible for:

   - writing lesson plans in advance and having approved and initialed by the cooperating teacher.
   - evaluating the effectiveness of each lesson he/she delivers and make corrections as needed
   - becoming familiar with and incorporating the required textbooks, instructional materials, manipulative, etc. that support the content material being taught.

All lesson plans must be kept in the Internship Notebook. This notebook must be placed on the intern's desk to be available for review by the cooperating teacher or university supervisor.

The _lesson plan format_ (page 30) must be used for:

   - the first five lessons taught
   - an additional five lesson plans. Four of these five lesson plans will be when the university supervisor visits. The fifth lesson plan can be written for one of the last lessons taught. These last five lesson plans must be written for a variety of subjects.

The intern is to use the short lesson plan format for the remainder of the lesson plans (Secondary majors, form on page 31 and all other majors form on page 32)

The intern is expected to react to the feedback he/she is given by the cooperating teacher and university supervisor and incorporate it in future lessons. The faculty of Troy University Dothan is continuously available to assist any intern. The intern is encouraged to participate in continuous self-evaluation.

**The intern must teach all day for a total of four weeks.**

**Two of these weeks must be consecutive (ten consecutive days, all day). The intern is required to be present in the assigned classroom for a minimum of 14 consecutive weeks (70 school days and 485 clock hours). The intern must teach a _minimum_ of 245 hours.**

5. The intern is expected to participate in all other experiences typical of the role of a teacher during the designated hours of the school day. These experiences are

referred to as *professional* experiences and include activities carried out during the designated planning period.

6. The intern is also expected to participate in regular formal conferences with the cooperating teacher(s) in order to assist the effectiveness of the intern. In addition, the intern is to discuss the internship on a regular basis with the university supervisor. Conferences are intended to allow time for the intern to ask questions, clarify expectations, and express ideas as well as to discuss formal and informal evaluation feedback.

7. The intern is required to participate in all activities of the school that are required of teachers. The intern is also expected to attend parent/teacher organization meetings, faculty meetings, and teacher committee meetings if invited by school personnel.

8. The intern is required to attend all orientation sessions and closing sessions scheduled by the Director before and at the end of the internship period. The purpose of these meetings is to clarify expectations, address areas of need, address areas of concern, provide guidance to the interns as they meet internship requirements, and the collection of materials for the students' TEP files. The Professional Internship Office (A303) is open Monday through Thursday 7:45 - 5:30 and Friday from 8:00 – 12:00 noon. Students may contact the Director of Professional Internship at any time during the semester through this office.

Interns enrolled in the nine-hour undergraduate/six-hour graduate internship program are expected to meet the following __minimum__ requirements:

>    Observation, participation, professional activities, conferencing
>    with cooperating teacher(s) and university supervisor(s).
>    A __minimum__ of 245 of these hours must be teaching.

>    **TOTAL.........485 hours**

Interns who are assigned to two placements will complete at least half of the hours in each category in each of the placements. Interns enrolled in less than the nine-hour or six-hour internship programs are expected to meet the requirements as determined by the Director.

## THE TEAM APPROACH TO INTERNSHIP

The internship is to provide the intern with opportunities to assume the teaching role while under the direction of the Director of the Professional Internship Program, the Cooperating Teacher, the Principal, and the University Supervisor. The internship is designed to present the intern with the real-life challenges that teaching offers.

1. *The Director.* The Director of the Professional Internship Program is concerned with the overall success of each intern. The Director, in cooperation with the local superintendents, determines the placements of the interns, reviews all evaluations, and assigns final grades to all interns.

2. *University Supervisor.* The university supervisor is the university representative who is assigned to the intern. The university supervisor assists the intern and is responsible for the formal evaluation of the intern.

3. *Cooperating Teacher*.  The cooperating teacher is the classroom teacher with whom the intern is placed for the internship period.  The cooperating teacher's role in the internship is a critical factor in the success of the intern.

The cooperating teacher is to:
a.   provide good teaching experiences for his/her students thus providing a good environment for the intern;
b.   provide direct assistance to the intern in becoming accomplished in the teaching role;
c.   demonstrate effective teaching techniques;
d.   observe the intern and offer appropriate feedback;
e.   assist the intern in the many facets of teaching.

4. *The Principal*:  The building principal is the principal of the school in which the intern has been placed.  Principals are encouraged to participate in the internship program by placing interns, observing interns as they perform the many internship duties, and providing feedback to the intern from the perspective of building level administrator.

# SUCCESSFUL INTERNSHIP

The attitude and initiative of the intern are expected to reflect a sincere desire to participate in the internship and to be successful in the internship endeavor.  The relationship developed with the students in the classroom by the intern is essential to the effectiveness of the internship.  Interns must establish appropriate rapport and must utilize appropriate interpersonal skills with the students.  The intern is responsible for his/her behavior throughout the internship.

The following information is offered to the intern to remind him/her of ways to display a positive attitude and initiative.  The intern is expected to:

1. show a genuine interest in the concerns and interests of the students, the cooperating teacher, and other school faculty and staff;
2. be a good listener;
3. quickly learn the names of the students and school personnel;
4. determine the extent of responsibility and authority at the beginning of the internship;
5. respect the school, the school personnel, the students, and the parents of the students;
6. accentuate the positive aspects of the school;
7. keep confidential information *confidential*;
8. fulfill responsibilities and commitments *on time*;
9. have excellent attendance (In the event of an emergency, contact the Director, the cooperating teacher(s), and any other personnel as directed by school policy):
10. show appreciation for the school placement and the assistance extended during the internship period.

The above list is only representative of the behavior expected of all interns at all times during the internship.

The intern is expected to fulfill all responsibilities in a timely, effective, ethical, and professional manner.  The teacher's performance responsibilities are outlined in the Professional Education Personnel Evaluation Program of Alabama (1997).

# ROLE DESCRIPTION

**POSITION TITLE:**  Teacher

**JOB GOAL:**   To help students learn subject matter and skills that will contribute to their development as mature, able, and responsible members of society.

**REPORTS TO:**  Principal

**SUPERVISES:**  Students and assigned personnel

## PERFORMANCE RESPONSIBILITY:

1. Determine individual and class needs.

2. Establishes objectives and plans learning experiences.

3. Implements activities using a variety of techniques that utilize instructional time to meet objectives.

4. Establishes and maintains standards of student behavior to achieve a functional learning atmosphere.

5. Exhibits positive human relations skills.

6. Evaluates the educational program and/or student progress.

7. Communicates with parents/guardians, colleagues, and community groups.

8. Demonstrates proficiency in written and oral communication.

9. Maintains and submits records and reports.

10. Adheres to school system rules, administrative procedures, local board policy, and state and federal rules and regulations.

11. Engages in personal professional growth and demonstrates professional ethics and leadership.

**FAILURE TO COMPLETE YOUR RESPONSIBILITIES IN A PROFESSIONAL MANNER WILL RESULT IN THE IMMEDIATE TERMINATION OF THE INTERNSHIP AND A FAILING GRADE WILL BE ASSIGNED THE INTERN FOR THE INTERNSHIP.**

# ATTENDANCE

Interns are expected to attend the school to which they have been assigned for the entire internship period. In the event of emergency absence, the intern must notify the Director, the cooperating teacher, the principal, and any other personnel as directed by the school. The absences must be excused by the Director and the principal and must be made up with additional time at the end of the internship period. **In no event is** the internship period shortened to accommodate unexpected absence. School holidays and weather days are not counted as days of internship and must be made up prior to the conclusion of the internship. Attendance must be recorded daily on the attendance form (page 34) and submitted to the Director at the close of internship meeting.

# ABSENCE OF COOPERATING TEACHER

In the event that the cooperating teacher is absent during the internship period, the school is required to employ an official substitute teacher for the period of time of the cooperating teacher's absence. <u>**Under no circumstances**</u> may an intern substitute teach during the internship period.

# TOTAL SCHOOL PROGRAM

The intern is expected to become familiar with the total school program. The intern is required to read and become familiar with any student handbook, faculty handbook, policy books, etc. of the school, school system, and the state. The intern is expected to fulfill the policies as stated by the handbooks and policy books. In addition, the intern is expected to become familiar with the many aspects of the school including the lunchroom, library, the media center, the office, the building and grounds, the health services, etc., as well as the personnel assigned to these areas. The intern is also expected to become familiar with the record keeping requirements of the school and is to keep records according to the requirements.

# EVALUATION OF INTERNSHIP

Troy University Dothan student interns who exhibit behaviors that are detrimental to teaching and learning will have their internship terminated. At any time, a cooperating teacher, principal, university supervisor or the Director of Internship may request a student intern to be removed from their internship site. Please note if a student intern receives a rating of an unsatisfactory performance (1) or minimally acceptable performance (2) from the cooperating teacher of university supervisor he or she must immediately take steps to improve in these areas.

If the student is removed from the internship experience, options include but are not limited to the following:

(1) The internship will be terminated with a grade of F.
(2) The student will participate in a remediation program.
(3) The student may select a non-certifiable degree option.

The final grade of internship is determined by the Director and is recorded as PASS, FAIL, or INCOMPLETE. An INCOMPLETE is awarded only in rare situations, which are determined by the Director. A student receiving an INCOMPLETE must work directly with the Director to expedite the completion of the internship immediately following the grade report. The grade is determined by the Director after careful review of all evaluations submitted by the cooperating teacher(s) and the university supervisor(s) and all reports submitted by the intern.

# RESPONSIBILITIES OF COOPERATING TEACHERS

Cooperating teachers are classroom teachers who not only have responsibility for guiding the development of the pupils in the classroom, but they are also teachers who are willing to assume the additional responsibility for guiding the development of an intern in his/her continuous teaching experience.

Area superintendents recommend cooperating teachers because of their demonstrated teaching ability, their interest in contributing to the improvement of the profession, and their special skills in working with and supervising another person. Cooperating teachers show competence in their teaching area(s), hold a master's degree in that area(s) for which the intern is seeking certification, and have at least three years of successful teaching experience.

The cooperating teacher is a critical component of the team of professionals working with the intern in that the cooperating teacher is responsible for providing day-to-day guidance and supervision of the intern. The major functions of the cooperating teacher are listed below:

1. Orient the intern to the school, the school personnel, the students, and the school procedures:

   During the pre-internship visit, the intern is to become acquainted with the cooperating teacher, the principal, and assignment. Before reporting for the day of the internship period, the intern is to have provided the cooperating teacher and the principal with information about himself/herself. The cooperating teacher may use this material to prepare the students for internship.

   Upon reporting to the school at the beginning of the internship period or at the time of the pre-internship visit, the intern is to be shown through the building, introduced to members of the staff, and be given an opportunity to become thoroughly familiar with the room(s) where he/she is to teach. The intern is to be made familiar with the policies of the school and system. The intern needs copies of the textbooks and any other instructional materials and supplies required to effectively deliver content material. The intern needs to be given an opportunity to review copies of any student or faulty handbooks and other policy manuals reflecting policies of the school and system.

   The intern needs a desk and a bookshelf which he/she can use during the internship period. The intern needs to become acquainted with the students he/she is to teach and is given information which will help him/her become an understanding teacher.

2. Induct the intern into the teaching process:

   The intern is usually eager to begin teaching. It has been found that gradual induction to teaching during the internship period, with the intern assuming some responsibility from the first day, builds confidence in the beginning teacher and is conducive to later success.

3. Supervise the teaching of the intern:

Each intern is required to teach all day for twenty days. Ten days must be consecutive. Each intern is required to earn a minimum of 245 hours of teaching time. The cooperating teacher and intern are to determine the teaching schedule. This schedule is to be submitted to the Director by the end of the first week of internship.

*[handwritten: As employed teacher/intern I will get credit for teaching every day per Mrs. Farris — required to follow the interns.]*

4. Providing feedback to the intern:

The cooperating teacher is to formally evaluate the intern on at least four times during the semester. The first observation should take place early in the term as the student begins teaching. At least one observation must take place during the ten consecutive days of teaching. The observations should occur approximately every three weeks. The cooperating teacher and intern will have a conference to review each evaluation as it is completed.

Explanation of the internship evaluation form and coding is provided beginning on page 17.

The cooperating teacher is to give continuous feedback to the intern regarding the intern's effectiveness. The cooperating teacher is responsible for guiding the growth of the intern and leading the intern through self-evaluation as well.

5. Other responsibilities:

The intern is to engage in all required activities of the teacher.

# CONCLUSION

In conclusion, some of the major responsibilities of the cooperating teacher(s) include:
1. plan for the initial orientation of the intern;
2. acquaint himself/herself with the Troy University, Dothan Campus internship program;
3. familiarize himself/herself with the intern;
4. create an effective learning environment;
5. introduce the intern to class routines, and school policy and procedure;
6. acquaint the intern with record keeping requirements;
7. acquaint the intern with instructional materials, supplies, and equipment;
8. establish a climate in which the intern may gradually develop skill in planning and delivering lessons;
9. offer the intern continuous feedback;
10. treat the intern as a professional;
11. provide opportunities for the intern to test ideas and theories;
12. arrange the schedule for the intern's teaching experiences;
13. provide continuous evaluation of the intern's teaching experiences through planned conferences and evaluation reports and feedback.

# COMPETENCIES DESIRABLE FOR WORKING WITH INTERNS

## Personal Relations

The cooperating teacher should:

1. respect the personal integrity of the intern;
2. accept the intern as a student and a fellow teacher;
3. establish and maintain informal, friendly working relations with the intern;
4. encourage the intern to express and discuss problems;
5. encourage the intern to make decisions based on careful study and defensible standards;
6. develop and suggest new ideas;
7. observe the intern at work and record observations for later conference;
8. suggest a positive approach toward solving problems;
9. maintain confidence in the intern and be optimistic;
10. take an empathetic interest in the intern; and;
11. be tactful and helpful in assisting the intern in adjusting to responsibilities and limitations;
12. be flexible in allowing the interns to test their new ideas and methods.

## Opportunities for Growth

The cooperating teacher should:

1. allow the intern to observe well-planned lessons which are designed to illustrate important principles and procedures;
2. properly use the intern's background experiences for the enrichment of the teaching-learning activities;
3. lead the intern into responsible teaching;
4. demonstrate sound teacher-pupil relations based on a thorough understanding of the psychology of child growth and development;
5. assist the intern in planning appropriate lessons;
6. provide a generous period of independent teaching to allow the intern a chance to develop self-confidence and skills (NOTE: The cooperating teacher is to leave the intern alone in the classroom ONLY with the permission of the administration of the local school system);
7. encourage independent study, responsibility for planning, organizing, and directing instruction;
8. maintain an open mind toward the intern's suggestion;
9. practice self-evaluation and model this process for the intern;
10. encourage the intern to analyze procedures and results;
11. continuously adjust to the changing needs and progressive development of the intern; and
12. encourage reflective decision-making.

## Growth in Professional Competence

The cooperating teacher should:
1. adjust the length and activities of the induction process to meet the needs of the intern;
2. evaluate the intern's early teaching to encourage the intern and provide the intern with proper and appropriate suggestions;
3. encourage the intern to use a wide variety of learning activities;
4. encourage the intern to develop new ideas and activities;
5. assist the intern in observing the growth of the students;
6. assist the intern in setting reasonable standards of performance for the class(es) and encouraging frequent evaluation for the class(es) and evaluation of appropriateness of the standards;
7. assist actively and continuously in the evaluation process; and
8. develop a system of observations including anecdotal records of observations and share these records with the intern at appropriate times.

## Professional Relations

The cooperating teacher should:
1. clarify the responsibilities and privileges of the intern; explain what is expected of the intern on the first day, during the week and periodically throughout the internship;
2. clarify the relationship of the intern to the administration, other teachers, pupils and parents;
3. explain to the intern the proper channels of communication;
4. make a place for the intern in the professional and social life of the school staff;
5. make definitive arrangements for the time, place and frequency of conferences;
6. assist the intern in arranging for observations and opportunities for further experience throughout the school and community;
7. assist the intern in securing opportunities to discuss professional matter with the
8. administrative personnel and other staff members;
9. refer the intern to sources of information, materials, and agencies that offer personal and professional services;
10. counsel the intern concerning professional plans and ambitions; and
11. invite the intern to appropriate seminars, meetings, etc.

## High Personal Standards

The cooperating teacher should:
1. influence the intern by example;
2. practice self-evaluation on an objective basis;
3. follow acceptable standards of language, dress, social amenities, and interpersonal skills;
4. maintain a sense of humor;
5. live a well-rounded life and retain a mature perspective toward personal and professional matters; and
6. exemplify maturity and emotional stability in the manner of reactions to situations and the method of proceeding professionally in the face of emotional tension, outside personal cares, and responsibilities.

## Good Professional Ethics

The cooperating teacher should:

1. maintain perspective and good working relations with the intern, students, colleagues, university faculty, parents, administration, and public;
2. refrain from placing personal "busy work" on the intern;
3. secure and analyze personal data about the intern and use it in a professional and confidential manner;
4. maintain objectivity if it becomes necessary to discuss with the intern inappropriate behavior on his/her part;
5. accept gracefully the standards of social and moral behavior which are expected of teachers by the community; and
6. objectively evaluate the advantages and disadvantages of teaching, but exhibit support of the profession;

# EXPLANATION OF FORMS FOR THE COOPERATING TEACHER

1. Evaluation Instruments

   This four-part form is to be completed by the intern's cooperating teacher. The cooperating teacher should send the white (original) and the goldenrod copies **immediately** upon completion of the evaluation to:

   > **Director, Professional Internship Program**
   > **College of Education**    -
   > **Troy University Dothan**
   > **Post Office Box 8368**
   > **Dothan, AL  36304-0368**

   The yellow copy is given to the intern and the cooperating teacher keeps the pink copy.

2. Report of Attendance for the Intern (page 34)

   The intern will complete the Attendance form daily. The completed form signed by the intern and cooperating teacher, will be turned in at the Close of Internship Meeting by the intern. The intern is required to be present in the assigned classroom a minimum of 14 consecutive weeks (70 school days and 485 clock hours) *UNLESS* the intern has an Alabama State Department of Education letter authorizing otherwise.

3. Evaluation of University Supervisor (page 40)

   This form is to be completed by the cooperating teacher and returned to the office of the Director of the Professional Internship Program by the end of the semester. The university supervisor has the privilege to review the evaluation by the cooperating teacher. The Director of the Professional Internship Program reviews this evaluation and addresses noted problems or concerns with the university supervisor.

*NOTE:  The university supervisors and the interns evaluate the cooperating teachers each semester.  These evaluations are available to the cooperating teachers upon request.*

# Evaluation of Interns by Cooperating Teachers and University Supervisors

## Explanation of Coding

Intern evaluation forms will use the following coding scale.

(5)   **Excellent, consistent performance**
<u>Explanation</u>:  The intern's performance on the competency indicators is excellent. The intern is consistently effective in the completion of the item.  The observer has gathered evidence through observation, interview, and a review of paperwork connected with the lesson.

(4)   **Above average performance**
<u>Explanation</u>:  The intern's performance often exceeds expectations for a pre-service teacher's performance on the competency being evaluated.  The skills present are appropriate for the classroom situation as observed.

(3)   **Average Performance**
<u>Explanation</u>:  The intern's performance exceeds minimal performance standards but does not meet the overall expectations for above average.

(2)   **Minimally acceptable performance**
<u>Explanation</u>:  The intern's performance meets the lowest level of expectations. The intern does not demonstrate adequate consistency in the skills being evaluated.  An intern receiving this rating will be required to meet the evaluator's requirements for the next evaluation or the item will receive a (1) rating.

(1)   **Unsatisfactory performance**
<u>Explanation</u>:  The intern does not demonstrate the desired competency during the evaluation period.  The intern MUST improve performance on any indicator with a (1) rating or he/she will not satisfactorily complete the internship.

(NO)  **Not Observed**
<u>Explanation</u>:  The observer/evaluator did not see evidence of this competency due to the nature of the classroom situation or the learners.  This is not a negative rating; the omission of the competency is not seen by the evaluator as a deficiency.  Any deficiencies should be noted with the other codes on the scale.

Recommendations or requirements made by the university supervisor and/or the cooperating teacher must be employed in the classroom as soon as possible.  Failure to cooperate with school personnel or university personnel will result in the termination of the internship with a grade of F (Failure).



# College of Education
# Internship Observation

Circle # of Observation    1    2    3    4    5

Student's Name: _____
Cooperating Teacher: _____    Date: _____
School: _____    Grade/Subject: _____
University Supervisor: _____
Coding Scale:    (5) Excellent, Consistent Performance    (2) Minimally acceptable performance
               (4) Above Average performance    (1) Unsatisfactory performance
               (3) Average Performance    (NO) Not Observed

| Competency Observed<br>The Intern: | Score |
|---|---|
| 1. Prepares and employs developmentally appropriate lessons and resources including technology | |
| 2. Planning skills and organization of materials | |
| 3. Presents the lesson: | |
|    a. Introduction | a. |
|    b. Development | b. |
|    c. Closure | c. |
|    d. Evaluation | d. |
| 4. Stimulate interest and growth in reading and an appreciation for reading in the content area by using a variety of teaching strategies | |
| 5. Provides practice and review | |
| 6. Demonstrates knowledge of content | |
| 7. Transitions are smooth and appropriate | |
| 8. Interacts well with students | |
| 9. Monitors student performance | |
| 10. Provides students with feedback | |
| 11. Manages class behavior | |
| 12. Maintains student involvement | |
| 13. Manages class time | |
| 14. Speaks standard, clear English | |
| 15. Writes standard, clear English | |
| 16. Exhibits a professional demeanor | |
| 17. Evidence of reflective thinking | |
| 18. Demonstrates a positive attitude and enthusiasm for teaching | |
| 19. Demonstrates reliability | |

**Recommendation/Requirements for Improvement:**

Date of Next Observation: _____

Intern's
Signature: _____    Date: _____

Evaluator's Signature: _____

## Explanation of Competencies

*See Gen Course Outline pg 7*
*Earn an Avg rating by the time final eval.*

1. **Prepares and employs developmentally appropriate lessons and resources including technology**

   The intern has developed or located resources appropriate to the lesson being taught and for the students who are a part of the lesson. The resources are related to the objectives for the lesson. A variety of resources are available and ready to use in the lesson. Appropriate technology and media have been integrated into the lesson plan.

   The intern skillfully integrates the resources into the lesson. The intern is able to use the resources correctly and without difficulty in operating equipment, sequencing the use of materials, or instructing students in the use of the resources. Technology and media have been used skillfully to enhance the lesson.

2. **Planning skills and organization of materials**

   The intern completes the lesson planning process with attention to starting objectives and purposes for the lesson. Planning demonstrates an understanding of the interrelated qualities of the parts of the lesson and the evaluation. Plans detail needed resources for the lesson. All materials and resources are organized. Any considerations for meeting the needs of all diverse learners in the classroom are described.

3. **Presents the lesson**

   This competency focuses upon the flow and pacing of the lesson as it is being presented. The intern begins with an overview, review, outline, or other introductory framework for the students that gains the attention of the students and effectively initiates the teaching process. The developmental stage of the lesson provides effective teaching strategies that allow the students to learn concepts, skills, or behaviors, indicated by the objectives and purposes of the lesson. The intern employs a variety of strategies in order to meet the needs of the diverse learners in the classroom. As the intern brings closure to the lesson, the student's attention is maintained while the lesson concludes with an overview, review, instruction for transition, etc. Evaluation is evident in the lesson.

4. **Stimulate interest and growth in reading and an appreciation for reading in the content area by using a variety of teaching strategies**

   The intern will stimulate interest in and foster appreciation for the written word, promote reading growth, and increase the motivation of students to read widely and independently for information and pleasure, by evaluating, selecting, and integrating a variety of strategies such as cooperative learning, discussion, discovery, problem-based learning, and direct instruction in teaching.

5. **Provides practice and review**

   The intern provides students with guided and independent practice, as appropriate to the lesson.

6. **Demonstrates knowledge of content**
The intern uses accurate, up-to-date material for lessons. In the lesson, the intern uses appropriate vocabulary, identifies and corrects misconceptions, and responds knowledgeably and accurately to all questions.

7. **Transitions and smooth and appropriate**
The intern facilitates smooth and appropriate transitions with the students.

8. **Interacts well with students**
Intern must establish appropriate rapport and utilize appropriate interpersonal skills with the students.

9. **Monitors student performance**
The intern checks for understanding of concepts presented during discussions, lectures, media presentations, or assignments. The intern encourages student questions and requests demonstrations of knowledge and skills from students. The intern asks questions which elicit answers indicating the use of higher order thinking skills.

10. **Provides students with feedback**
The intern acknowledges the participation of students and affirms correct responses to questions. If corrective action is necessary, the intern does so in an appropriate behavior. The intern's tone and tact are appropriate for the situation and the learners. The intern does not employ sarcasm, ridicule, or inappropriate comments.

11. **Manages class behavior**
The intern emphasizes rules and procedures and monitors adherence to the rules and procedures established for the class. The intern anticipates off-task or inappropriate behaviors and intervenes. Verbal and nonverbal communications are employed. Appropriate behavior is rewarded and reasonable sanctions are used.

12. **Maintains student involvement**
The intern encourages participation by all students. Student ideas and responses are acknowledged, and the intern seeks elaboration for brief or incomplete responses. The students have a role in the instructional process and decision making. The intern establishes positive rapport with the students.

13. **Manages class time**
The intern begins promptly and efficiently completes housekeeping/administrative duties. The intern minimizes the loss of instructional time and redirects or discourages digressions. Interruptions are handled with a minimum of disruption of class. The intern uses all instructional time allotted for the lesson or the block of time for the class.

14. **Speaks standard, clear English**
The intern uses standard speech and pronunciation. When appropriate and necessary, the intern adjusts his/her rate, volume, and pitch. The appropriate vocabulary is used in all spoken communication.

15. **Writes standard, clear English**
The intern uses Standard English in all written work. The information is organized with the correct vocabulary. All words are spelled correctly and sentences are grammatically correct. Handwriting is legible and neat.

16. **Exhibits a professional demeanor**
The behavior of the intern is that which is expected of a professional educator. The intern is dressed professionally and appropriately for the classroom activities. The intern shows involvement in the school and classroom activities and demonstrates attention to details. The intern accepts personal responsibility and acts on suggestions and criticism. He/she shows initiative and volunteers when it is appropriate. The intern is cooperative and demonstrates self-control and self-confidence. The intern arrives at school prior to sign-in-time for teachers and remains a part of the school's activities until the teachers are permitted to leave for the day.

17. **Evidence of reflective thinking**
The intern demonstrates evidence of reflective thinking.

18. **Demonstrates a positive attitude and enthusiasm for teaching**
The intern's attitude is positive. In all activities, the intern demonstrates an enthusiasm for teaching.

19. **Demonstrates reliability**
The intern's accepts responsibility for his/her duties as a teacher. He/she is on time and prepared for the day's responsibilities. When the intern is given an assignment by the cooperating teacher or the university supervisor, he/she completes it professionally and in a timely manner.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NANCY MILLER, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | CASE NO. 1:06cv00940-MEF |
| | ) | |
| HOUSTON COUNTY BOARD OF | ) | |
| EDUCATION; | ) | |
| KENNETH LORD; | ) | |
| RILEY JOE ANDREWS; | ) | |
| TIM PITCHFORD; | ) | |
| PAUL STRANGE; | ) | |
| STACY EZELL; | ) | |
| TROY UNIVERSITY, DOTHAN; | ) | |
| SANDRA JONES; | ) | |
| PAM PARRIS; | ) | |
| And | ) | |
| GREG RUEDIGER, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

PLAINTIFF'S RESPONSE TO "DEFENDANTS' [HOUSTON COUNTY BOARD OF
EDUCATION] FIRST REQUEST FOR PRODUCTION TO PLAINTIFF, NANCY
MILLER"


Response to No. 6.


"Plaintiff's courses and grades at Troy University"


1

```
03/19/07                    TROY University-Undergraduate                    Page 1


Nancy M. Miller                              ID Number: 0947502
100 Oak Manor Court                                 SSN: XXXXX0785
Midland City AL 36350                        GECE Taken: N




                                                    Hrs     Hrs    Grade
Course  Num  Sec  Title                   Grd R    Att    Cmpt   Points
-------  ----  -----  --------------------------  ---  --  ------  ------  --------
************************************************************************
Troy State University Dothan credit prior to TROY University Fall 2005 merger.
************************************************************************

BIO    1104       ORGANISMAL BIOLOGY         B         4.00    4.00   12.0000
WALLACE STATE COMMUNITY COLLEGE DOTHAN
            Transfer Credit  Totals:   4.00   4.00   12.0000 GPA =    3.0000
                    Cumulative Totals:   4.00   4.00   12.0000 GPA =    3.0000
                 Institutional Totals:   0.00   0.00    0.0000 GPA =    0.0000

ENG    1101       COMPOSITION AND MODERN ENG I   A       3.00    3.00   12.0000
ENG    1102       COMPOSITION AND MODERN ENG II  A       3.00    3.00   12.0000
FRE    0000       FREE ELECTIVE              A         3.00    3.00   12.0000
FRE    0000       FREE ELECTIVE              A         1.00    1.00    4.0000
FRE    0000       FREE ELECTIVE              A         3.00    3.00   12.0000
HUM    2200       HUMANITIES IN THE WEST WORLD  A       3.00    3.00   12.0000
PSY    2200       GENERAL PSYCHOLOGY         A         3.00    3.00   12.0000
JOHNSON COUNTY COMMUNITY COLLEGE
            Transfer Credit  Totals:  19.00  19.00   76.0000 GPA =    4.0000
                    Cumulative Totals:  23.00  23.00   88.0000 GPA =    3.8261
                 Institutional Totals:   0.00   0.00    0.0000 GPA =    0.0000

ENG    2212  CA   AMERICAN LITERATURE II     A         3.00    3.00   12.0000
HIS    1111  CA   U.S. TO 1877               A         3.00    3.00   12.0000
HPR    2206  AA   HEALTH CONCEPTS            A         3.00    3.00   12.0000
MTH    1111  BA   INTERMEDIATE COLLEGE ALGEBRA  A       3.00    3.00   12.0000
SPH    2244  CA   ESSENTIALS OF SPEECH COMMUNICA A       3.00    3.00   12.0000

                  01/FA Totals:  15.00  15.00   60.0000 GPA =    4.0000
            Cumulative Totals:  38.00  38.00  148.0000 GPA =    3.8947
         Institutional Totals:  15.00  15.00   60.0000 GPA =    4.0000
                  President's Honor List

CIS    2243  CC   COMPUTER CONCEPTS AND APPLICA  A       3.00    3.00   12.0000
 TH    1112  CB   COLLEGE ALGEBRA            B         3.00    3.00    9.0000
 CI    2233  CB   PHYSICAL SCIENCE           A         4.00    4.00   16.0000
SCI    2234  CB   EARTH SCIENCE              A         4.00    4.00   16.0000

            Official copy must bear signature of the Registrar.
```

03/19/07                      TROY University-Undergraduate                        Page 2

Nancy M. Miller                              ID Number: 0947502
100 Oak Manor Court                                SSN: ████████785
Midland City AL 36350                        GECE Taken: N

| Course | Num | Sec | Title | Grd | R | Hrs Att | Hrs Cmpt | Grade Points |
|--------|-----|-----|-------|-----|---|---------|----------|--------------|
| SOC | 2200 | CA | CULTURAL ANTHROPOLOGY | A | | 3.00 | 3.00 | 12.0000 |

           02/SP Totals:  17.00  17.00  65.0000  GPA =    3.8235
       Cumulative Totals:  55.00  55.00 213.0000  GPA =    3.8727
    Institutional Totals:  32.00  32.00 125.0000  GPA =    3.9063
             Dean's Honor List

| MTH | 1102 | CA | FINITE MATHEMATICS | B | | 3.00 | 3.00 | 9.0000 |
| PSY | 3303 | CA | EDUCATIONAL PSYCHOLOGY | B | | 3.00 | 3.00 | 9.0000 |
| PE | 3340 | CA | DIVERSE LEARNERS | A | | 3.00 | 3.00 | 12.0000 |

           02/SU Totals:   9.00   9.00  30.0000  GPA =    3.3333
       Cumulative Totals:  64.00  64.00 243.0000  GPA =    3.7969
    Institutional Totals:  41.00  41.00 155.0000  GPA =    3.7805

          ADMITTED TO TEP

| BIO | 1100 | CB | PRINCIPLES OF BIOLOGY | W | | 0.00 | 0.00 | 0.0000 |
| EDU | 3310 | AA | THE PROFESSIONAL EDUCATOR | A | | 3.00 | 3.00 | 12.0000 |
| EDU | 3330 | CA | PROFESSIONAL COLLABORATION | A | | 3.00 | 3.00 | 12.0000 |
| ENG | 2211 | CB | AMERICAN LITERATURE I | A | | 3.00 | 3.00 | 12.0000 |
| GEO | 2210 | CA | WORLD REGIONAL GEOGRAPHY | A | | 3.00 | 3.00 | 12.0000 |

           02/FA Totals:  12.00  12.00  48.0000  GPA =    4.0000
       Cumulative Totals:  76.00  76.00 291.0000  GPA =    3.8289
    Institutional Totals:  53.00  53.00 203.0000  GPA =    3.8302
          President's Honor List

| BIO | 1100 | CB | PRINCIPLES OF BIOLOGY | B | | 4.00 | 4.00 | 12.0000 |
| EDU | 3304 | CB | ASSESSMENT IN EDUCATION | A | | 3.00 | 3.00 | 12.0000 |
| MTH | 2251 | CA | MATH CONCEPTS FOR K-6 TEACHERS | B | | 3.00 | 3.00 | 9.0000 |
| PSY | 2210 | CV | DEVELOPMENTAL PSYCHOLOGY | A | | 3.00 | 3.00 | 12.0000 |
| SPE | 3302 | CA | INTRO TO MOD & SEVERE DISABILS | A | | 3.00 | 3.00 | 12.0000 |

           03/SP Totals:  16.00  16.00  57.0000  GPA =    3.5625
       Cumulative Totals:  92.00  92.00 348.0000  GPA =    3.7826
    Institutional Totals:  69.00  69.00 260.0000  GPA =    3.7681

Official copy must bear signature of the Registrar.

03/19/07                    TROY University-Undergraduate                        Page 3


Nancy M. Miller                              ID Number: 0947502
100 Oak Manor Court                               SSN: ██████0785
Midland City AL 36350                       GECE Taken: N


```
                                                       Hrs    Hrs    Grade
Course  Num   Sec  Title                    Grd R      Att    Cmpt   Points
-------  ----  ---- ------------------------------ --- -- ------ ------ --------
SPE     3304  CA   MOD/SEVERE DISABILITIES: 6-12   A         3.00   3.00  12.0000
SPE     3349  CA   INTRO TO MILD DISABIL:K-12      B         3.00   3.00   9.0000

                 03/SU Totals:     6.00    6.00  21.0000 GPA =    3.5000
            Cumulative Totals:    98.00   98.00 369.0000 GPA =    3.7653
          Institutional Totals:   75.00   75.00 281.0000 GPA =    3.7467

EDU     3383  CA   TEACHING MATHEMATICS            A         3.00   3.00  12.0000
SPE     3303  CA   TCHING STDTS W/MLD DISABL:6-12  B         3.00   3.00   9.0000
SPE     4493  CA   GUIDED INDEPENDENT STUDY        B         3.00   3.00   9.0000
SPE     4494  CB   GUIDED INDEPENDENT STUDY        B         4.00   4.00  12.0000

                 03/FA Totals:    13.00   13.00  42.0000 GPA =    3.2308
            Cumulative Totals:   111.00  111.00 411.0000 GPA =    3.7027
          Institutional Totals:   88.00   88.00 323.0000 GPA =    3.6705

EDU     4471  CB   CURRIC & INSTRUCTION DELIVERY   A         3.00   3.00  12.0000
MTH     2252  CB   INFORMAL GEOMETRY               A         3.00   3.00  12.0000

                 04/SP Totals:     6.00    6.00  24.0000 GPA =    4.0000
            Cumulative Totals:   117.00  117.00 435.0000 GPA =    3.7179
          Institutional Totals:   94.00   94.00 347.0000 GPA =    3.6915

SPE     3346  CA   ASSESSMENT IN SPECIAL EDU       A         3.00   3.00  12.0000
SPE     3362  CA   POL AND PROCEDURES IN SPE ED    B         2.00   2.00   6.0000

                 04/SU Totals:     5.00    5.00  18.0000 GPA =    3.6000
            Cumulative Totals:   122.00  122.00 453.0000 GPA =    3.7131
          Institutional Totals:   99.00   99.00 365.0000 GPA =    3.6869

SPE     4454  CA   INTERNSHIP SEMINAR              A         3.00   3.00  12.0000
SPE     4465  CA   COLLAB TEACHER (6-12) INTERNSP  P         0.00   9.00   0.0000

                 04/FA Totals:     3.00   12.00  12.0000 GPA =    4.0000
            Cumulative Totals:   125.00  134.00 465.0000 GPA =    3.7200
          Institutional Totals:  102.00  111.00 377.0000 GPA =    3.6961

    CUMULATIVE TOT: CRED.ATT = 125.00 CRED.CPT = 134.00 GRD.PTS = 465.0000 GPA =   3.7200
                  Official copy must bear signature of the Registrar.
```

03/19/07                          TROY University-Undergraduate                          Page 4

Nancy M. Miller                              ID Number: 0947502
100 Oak Manor Court                                  SSN: ██████0785
Midland City AL 36350                         GECE Taken: N


```
                                                        Hrs   Hrs   Grade
Course  Num  Sec   Title                        Grd R   Att   Cmpt  Points
-------  ----  -----  ------------------------------  ---  --  ------  -----  --------
INSTITUTIONAL TOT: CRED.ATT =  102.00 CRED.CPT =  111.00 GRD.PTS = 377.0000 GPA =    3.6961
************************************************************************
*  BS in Education Degree Awarded on 05/05                            *
*  Majors                 Minors                Specializations      *
*  ------------------------ ------------------------ ------------------------  *
*  Collaborative Ed 6-12                                              *
*  Honors:                                                            *
*    ML - Magna Cum Laude                                             *
************************************************************************
```


Official copy must bear signature of the Registrar.



DEFENDANT'S EXHIBIT NO. 30

September 30, 2004

Nancy Miller

<u>Professional Comments</u>

**Mr. Tim Pitchford, Principal Houston County High School:**
Unprofessional behavior – leaving campus and negative comments made to cooperating teacher
"Causing anxiety among teachers" Three teachers had met with him expressing concerns
"Not following directions of cooperating teacher"
"Crying in the classroom"

**Mr. Paul Strange, Cooperating Teacher**
"Professional behavior not very good of late"
Telling other teachers that he is out to get her
Lied about writing an IEP–claimed someone went into her files
"Extreme Disrespect"
"At times not following my directions"
"I am guarded around her"
Does not feel he can accurately assess, she is vindictive
"Interacts ok with kids"
"Outside the classroom is where she is having problems"
"Difficulties collaborating with regular education"
"Three or four teachers have asked what is wrong with Ms. Miller"

**Ms Towns, Regular Education Teacher**
"Enjoy her coming into my class" "She is willing to work"
"Positive relationships with kids"
Collaborates well
With other teachers comes across as overbearing-clash of personalities
"Appears nervous at times"





1                    DEFENDANT'S EXHIBIT NO. 31
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Blackboard Learning System TM (Release 6)                                    Page 1 of 1

◄◄ Previous Message    Next Message ►►

**Current Forum:** Discussion #2: Surprises -- Due Sept. 5th-11th          Read 16 times
**Date:** Sat Sep 11, 2004 6:10 pm
**Author:** Miller, Nancy M. <nmmiller@aol.com>
**Subject:** Re: Discussion #2 Surprises

( Remove )

Amy, Amy, Amy, You've done it now!!!!  You definitely  SHOULD NOT have mentioned the lack of respect of HCHS Faculty because now I have to vent a little more.  I have been in many schools across the country as a volunteer, substitute, and now as a teacher.  I can honestly say I have never had to contend with a more condescending, disrespectful, rude, and obnoxious teacher in my life.  She derives extreme satisfaction from embarrassing, humiliating, and laughing at (not with) her students, her student aide, as well as fellow colleagues. The county went to full inclusion and was informed of the decision 3 days before students returned to school.  That means I get the pleasure of her company just about every day as I am supposed to be a collaborative teacher.  Right!  She has called the Special Ed students "the dummies and retards".  That's what I call respect!  She made snide comments and/or laughed about each student as I went through the IEP goal & objective sheets.  Throughout my life as a military wife (both enlisted and then officer), I have been exposed to many people with different personalities, cultural backgrounds, etc. so I've experienced many social and professional settings.  I have always been able to ignore/overlook and sometimes even excuse people's behavior and that's what I've done with her.  This has become VERY DIFFICULT.  My mentor & I have spoken about the situation and he is at a loss as to what to do.  He'd also like input from my Internship Seminar colleagues.  The principal is aware of her personality and warned us that she could be difficult - so he will be of no help.  If we approach her she could make things even more difficult for the Spec. Ed. students.  We do not want to alienate anyone.  Any suggestions?

On the positive side - I personally have had no discipline problems with any of the Special Ed. students I work with / pull out.  Even those who have behavior plans.

( Reply )

◄◄ Previous Message    Next Message ►►

**Current Thread Detail:**
| | | |
|---|---|---|
| Discussion #2 Surprises | Deese, Amy | Tue Sep 7, 2004 10:23 am |
| Re: Discussion #2 Surprises | Wright, Christie | Sat Sep 11, 2004 12:09 pm |
| Re: Discussion #2 Surprises | Miller, Nancy M. | Sat Sep 11, 2004 6:10 pm |
| Re: Discussion #2 Surprises | Deese, Amy | Sat Sep 11, 2004 6:44 pm |
| Re: Discussion #2 Surprises | West, Elizabeth | Wed Sep 8, 2004 9:54 am |
| Re: Discussion #2 Surprises | Roberson, Amanda | Wed Sep 8, 2004 5:57 pm |
| Re: Discussion #2 Surprises | Boyle, Douglas | Sun Sep 12, 2004 1:30 pm |

( OK )



DEFENDANT'S EXHIBIT
31
PENGAD Bayonne, N.J.