IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NANCY MILLER, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| v. ) | Case No. 1:06-CV-940-MEF-TFM |
| ) | |
| HOUSTON COUNTY BOARD ) | |
| OF EDUCATION, et al. ) | |
| ) | |
| DEFENDANTS. ) | |

**DEFENDANTS PAUL STRANGE AND STACEY EZELL'S
REPLY TO PLAINTIFF'S RESPONSE TO THEIR
MOTION FOR SUMMARY JUDGMENT**

**COME NOW** Defendants Paul Strange and Stacey Ezell and provide the following reply brief to plaintiff's response to their Motion for Summary Judgment:

I. **WITHIN THE LAST THREE WEEKS, THE ELEVENTH CIRCUIT DECIDED A CASE ALMOST DIRECTLY ON POINT WITH THE ONE AT HAND, HOLDING THAT THE DEFENDANTS WERE ENTITLED TO QUALIFIED IMMUNITY.**

The Eleventh Circuit issued its opinion in *Boyce v. Andrew*, __ F.3d __ (11th Cir. 2007), 2007 WL 4458309, on December 21, 2007. The *Boyce* case was brought by two Georgia Department of Children and Family Services (hereafter "DCFS") case workers who, like the plaintiff here, claimed that adverse employment action was taken against them in retaliation for their exercise of their free speech rights. The trial court denied qualified immunity to the supervisory defendants, and the defendants took an interlocutory appeal with

the Eleventh Circuit. The two plaintiffs claimed that they repeatedly raised concerns about the size of their caseloads which negatively impacted the safety of children in the care of DCFS. The plaintiffs further claimed that after they raised these concerns, one was demoted and the other was terminated from her employment in violation of their free speech rights under the First Amendment. The trial court decided that the case workers' concerns over child safety were matters of public concern.

The Eleventh Circuit disagreed with the trial court, and reversed and remanded. The appeals court held that the caseworkers' jobs were to investigate the cases of children allegedly at risk and to make recommendations to their supervisors. The Court determined that the form and context in which the complaints about the caseloads were made was indicative that the plaintiffs intended to address only matters connected with their jobs. The complaints were mainly verbal, by e-mail and through internal complaint forms. The Eleventh Circuit held that:

> The fact that such information may be of general interest to the public, however, does not alone make it of 'public concern' for First Amendment purposes. To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark- and certainly every criticism directed at a public official- would plant the seed of a constitutional case.

*Boyce*, __ F.3d __, *6 (11th Cir. 2007) (internal citations omitted).

The Court went on to discuss that while the safety of children under DCFS care is of the utmost importance to the purpose of that agency, the plaintiffs' speech, while intermingled with issues of child safety and DCFS mismanagement, was not intended to

address matters of public concern from the perspective of a citizen. The *Boyce* Court held that because the two case workers spoke as government employees about their jobs and not as citizens, they had no First Amendment cause of action based on their employer's reaction to their speech. Therefore, with no constitutional right upon which to base the case, the Eleventh Circuit held that the supervisory defendants were entitled to qualified immunity.

     Clearly, the same result is due here for Paul Strange and Stacey Ezell. The Eleventh Circuit's analysis of the relevant case law in the *Boyce* case parallel the arguments made by these defendants in their Motion for Summary Judgment. Here, the plaintiff's speech was made in her capacity as a student teacher/intern/teacher working for the Houston County Board of Education. Clearly, even if the employment contract was unenforceable, the plaintiff was present at Houston County High School every day from August until October 2004 as a special education teacher/ substitute teacher. Mr. Strange and Ms. Ezell would not have had access to any information which informed them that the plaintiff's contract with the Board was unenforceable. The plaintiff interacted with Mr. Strange and Ms. Ezell as a special education teacher/intern. The plaintiff would not have had access to the IEPs or any other special education documents or been able to participate in special education meetings at the high school unless she had been considered a teacher, because there are very stringent privacy laws in regard to the dissemination of information on special education students, including the Individuals with Disabilities Education Act, Section 504 of The Rehabilitation Act of 1973 and the Federal Education Right to Privacy Act.

Just as the DCFS case workers in *Boyce* complained about alleged deficiencies in their workplace, couching them in terms of children's safety, the plaintiff in this case is attempting to generalize her complaints in the same manner. Plaintiff argues in her response that education, and particularly special education, are matters of public concern because they "involve both massive amounts of public funds and affect the lives of million of parents and children." (Response, unnumbered, but p. 15). This is the same argument made by the plaintiffs in the *Boyce* case. However, the Eleventh Circuit held:

> The safety of children under Dekalb DCFS care is the issue of paramount importance to the purpose of the agency; it is intertwined with each act of a case manager and impacts every aspect of the performance of a case manager's job. The record in this case reveals that the speech of Boyce and Robinson, while ostensibly intermingled with issues of child safety and Dekalb DCFS mismanagement, was not intended to address matters of public concern from the perspective of a citizen.

*Id.* at *7.

The plaintiff is off the mark when she states: "It does not appear that the Defendants are seriously contending that such matters are not matters of public concern." (Plaintiff's Response, unnumbered, but pp. 15-16) Defendants Strange and Ezell are very clear that the plaintiff's statements about the special education program at Houston County High School were not intended to address matters of public concern from the perspective of a citizen. Because the plaintiff's speech did not address matters of public concern, like in *Boyce*, she has no First Amendment cause of action based on the withdrawal of her internship and termination of her employment. Thus, with no constitutional right upon which to base her

case, defendants Paul Strange and Stacey Ezell are entitled to the protection of qualified immunity.

Defendants Mr. Strange and Ms. Ezell anticipate that the plaintiff will argue that *Boyce* does not apply. Even if the plaintiff draws some type of legal distinction, *Boyce* provides protection because these defendants have advanced the defense of qualified immunity. What Mr. Strange and Ms. Ezell are accused of doing is critiquing a student teacher/intern. Clearly, such is the purpose of student teaching, because without criticism and review, there is no need for one to be a student teacher. Instead, colleges of education throughout the state would simply abandon the "student teaching" aspect of their programs and send new graduates straight into the classroom. If the plaintiff argues that *Boyce* does not apply, the plaintiff would have to draw legal distinctions that are not clear to a teacher who critiques a student teacher. Qualified immunity protects individuals unless law is crystal clear. "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what [the] defendant is doing violates federal law in the circumstances." *Lassiter v. Alabama A&M University*, 28 F.3d 1146 (1150) (11th Circuit, 1994) (en banc). The *Boyce* case shows that, as late of three weeks ago, the Eleventh Circuit believed that the actions taken by Mr. Strange and Ms. Ezell would be protected by qualified immunity. Obviously, the law therefore was not "earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government

5

actors, in the defendants' place, that 'what he is doing' violates federal law." *Lassiter*, at 1149, citing *Anderson v. Creighton*, 483, U.S. 635, 640 (1987).

In other words, if reasonable people could disagree about whether Mr. Strange or Ms. Ezell responded in a reasonable manner, qualified immunity protects them. As the Eleventh Circuit said in its en banc decision of *Marsh v. Butler County*, 628 F. 3d 1014, 1032 (11th Circuit, 2001)(en banc):

> For a court to conclude that - - in the light of the clearly established law at the pertinent time - - a hypothetical jury, considering all the complaint's alleged facts as true, could decide that the defendant responded unreasonably is not sufficient to overcome the qualified immunity defense raised in a Rule 12(b)(6) motion. This formulation is nothing more than saying that reasonable people might or might not think - - this is, could disagree about whether - - the government actor behaved unreasonably. It is this kind of situation - - that is, one where the alleged facts (accepted as true) leave the legal consequences uncertain - - for which the defense of qualified immunity was designed.

Accordingly, Mr. Strange and Ms. Ezell are entitled to qualified immunity.

## II. PLAINTIFF DID NOT PROVIDE SUBSTANTIAL EVIDENCE TO PROVE THAT PAUL STRANGE OR STACEY EZELL'S CONDUCT WAS "ATTENDING" HER DISCHARGE.

The plaintiff incorrectly, and without any evidentiary support, argues that Stacey Ezell resented the plaintiff and this resentment was somehow related to the plaintiff's free speech. (Response, unnumbered, but p. 18). There is no citation to any deposition testimony or other evidence to support the plaintiff's bald accusation against Ms. Ezell. Ms. Ezell never said that she resented the plaintiff. In fact, the evidence clearly shows that Ms. Ezell did not have any ill will against the plaintiff. (Aff. of Ezell) Further, plaintiff's comment that Mr. Strange

and Ms. Ezell "were willing to sign Pitchford's remonstrance against her and others apparently were not" is complete speculation. (Response, unnumbered, but p. 18) There is no evidence that Mr. Pitchford asked other faculty to sign the memo, but they refused. In fact, Mr. Pitchford testified that he did not know why he did not ask any other faculty or staff to sign the document, even though others contributed to it. (Depo. of Pitchford, p. 77, l. 4-14).

Further, the evidence clearly shows that neither Strange nor Ezell considered the memo to be "a remonstrance." Neither educator intended for there to be any adverse employment action taken against Ms. Miller in response to the document they signed. (Depo. of Strange, p. 87, l. 17-20; Depo. of Ezell, p. 10, l. 1-10; p. 19, l. 19-22; p. 51, l. 1-8) Both Mr. Strange and Ms. Ezell testified that they understood that the document would be used as a tool to communicate to student teacher/intern teacher Ms. Miller which areas of her teaching methods needed work. (Depo. of Strange, p. 87, l. 21 - p. 88, l. 12; Depo. of Ezell, p. 51, l. 1-8) Neither educator understood or meant for Troy University Dothan to take any adverse action in regard to the plaintiff's internship because of the signed document. (Depo. of Strange, p. 87, l. 9-20; Depo. of Ezell, p. 10, l. 1-10; p. 19, l. 19-22; p. 51, l. 1-8). Without this type of teacher review and assistance to student teachers, the requirement of student teaching is not necessary. What good is student teaching if the teachers who supervise cannot comment on the student teacher's work?

Later in her brief, plaintiff attempts to categorize this evidence as testimony "which

would sound ridiculous to any impartial Alabamaian on a jury." (Plaintiff's Response, unnumbered, but p. 19) However, the plaintiff has no evidence to dispute Paul Strange and Stacey Ezell's thought process in providing peer review to help the plaintiff. Quite clearly, there is no evidence to show that when Mr. Strange and Ms. Ezell signed the memo they intended it to cause the plaintiff's internship to be withdrawn and her employment to be terminated. The plaintiff, once again, relies on speculation and conjecture, which cannot be the basis for the denial of summary judgment for these defendant educators.

Also of interest, the plaintiff mentions making her concerns about the special education program known to Ruediger, Andrews, Singletary, Pitchford and Strange (Response, unnumbered, but pp. 14-15) in her response, but never refutes these defendants' assertion that the plaintiff never brought any concern about the special education program to Ms. Ezell. (Depo. of Ezell, p. 7, l. 5-15) Further, the plaintiff does not dispute that the only concern she expressed to Paul Strange was that the "inclusion model" being used at the school was not proper. (Depo. of Strange, p. 18, l. 13-24; p. 20, l. 3-19; p. 32, l. 19-24; p. 40, l. 8-13; p. 43, l. 1 - p. 46, l. 19). Clearly, the plaintiff cannot show that any action taken or statement made by either Mr. Strange or Ms. Ezell caused her to have her internship withdrawn and her employment terminated.

### III. IF THE PLAINTIFF WAS ASSERTING A FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS CLAIM, SHE HAS ABANDONED IT.

Plaintiff does not respond to Mr. Strange and Ms. Ezell's argument that they are entitled to summary judgment on plaintiff's Fourteenth Amendment Procedural Due Process

claim. Thus, if such a claim was actually asserted by the plaintiff in her complaint, then she has effectively abandoned it by not responding to defendants' argument in their initial brief.

## IV. PLAINTIFF DID NOT COMPLY WITH THIS COURT'S UNIFORM SCHEDULING ORDER IN HER RESPONSE BRIEF.

This Court's December 8, 2006 Uniform Scheduling Order requires: "In all briefs filed by any party relating to the motion, the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document. Failure to make such specific reference will result in the evidence not being considered by the court." The plaintiff has clearly failed throughout her response brief to comply with this provision of the Scheduling Order. Plaintiff lumps together several alleged facts in each paragraph of her "Statement of Facts," but only throws in a cite every few sentences, if then. Defendants Ezell and Strange have found it difficult to respond to plaintiff's alleged "Statement of Facts" because so much of it is pure speculation and conjecture on the part of the plaintiff. The Eleventh Circuit has specifically held that a properly supported motion for summary judgment cannot be overcome with mere speculation or conjecture. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)(holding that conclusory allegations and conjecture cannot be the basis for denying summary judgment). These defendants cannot properly respond to the veracity of the assertions made by plaintiff without a cite to testimony or another document to support it. With this disclaimer, defendants attempt to reply to the plaintiff's asserted "Statement of Facts" as follows:

Plaintiff cites to testimony by Paul Strange in support of an alleged contention that Starla Smith and Cathy Keasler were trying to mentor the plaintiff. Neither Stacey Ezell nor Paul Strange contended in their brief that Cathy Keasler or Starla Smith was mentoring the plaintiff.

The plaintiff's assertion that there is "almost unanimous uncertainty among the HCBOE Defendants as to whether such reports by [the plaintiff] were somehow required of her" is completely devoid of support. (Response, unnumbered, but p. 4). The evidence is clear that it is within every Houston County Board of Education employee's right and official duty to report a perceived wrong at a school to his or her supervisor. (Depo. of Lord, p. 30, l. 25 - p. 31, l.7; Depo. of Pitchford, p. 67, l. 22 - p. 68, l. 4)

Plaintiff states "it is not unreasonable to propose that, to the extent that Strange acted as a cooperating teacher, he was acting on behalf of TUD, and not as a representative of HCBOE." (Response, unnumbered, but p. 5) This assertion is completely without basis in the evidence. At no point was Paul Strange an employee or agent of Troy University. He was employed as a special education teacher at Houston County High School at all times relevant to this case. (Aff. of Strange). While Paul Strange was offered a stipend from Troy for acting as the plaintiff's cooperating teacher, he declined any compensation. (Depo. of Strange, p. 211, l. 11-13). The plaintiff has offered no evidence to support this bald assertion, and it is due to be stricken.

Another statement completely without merit is the plaintiff's contention that Ms.

10

Parris' testimony was in direct contradiction of the testimony of Paul Strange. Plaintiff tries to imply that Mr. Strange's testimony is support for her position that Mr. Strange had a different recollection of information discussed at a meeting more than three years ago than Ms. Parris had. A closer read of Mr. Strange's testimony actually shows that he did not remember the specifics of that meeting in the fall of 2004. (Depo. of Strange, p. 213, l. 10 - p. 214, l. 14).

The plaintiff also claims that Paul Strange, "in concert" with the psychometrist, placed the plaintiff in "uncomfortable situations." (Response, unnumbered, but p. 7) This statement is misleading, as there was only one event discussed during this case when several Houston County Board of Education employees testified that the plaintiff overreacted to a situation. Mr. Strange testified that the psychometrist offered to show the plaintiff some special education documents which had just been discussed during a meeting in order to familiarize her with them. (Depo. of Strange, p. 181, l. 1-22). The plaintiff was not being asked to do anything illegal, (Depo of Strange, p. 181, l. 23 - p. 183, l. 12) and she has no evidence to support any such assertion except her own paranoia.

## **CONCLUSION**

For the reasons stated herein and in these defendants' motion for summary judgment and supporting brief, Defendants Paul Strange and Stacey Ezell are entitled to summary judgment in their favor as to all claims asserted against them in plaintiff's Complaint.

11

Respectfully submitted,

*/s/ Mark S. Boardman*
Mark S. Boardman (ASB-8572-B65M)

*/s/ Katherine C. Hortberg*
Katherine C. Hortberg (ASB-5374-B34K)
BOARDMAN, CARR, HUTCHESON
    & BENNETT, P.C.
400 Boardman Drive
Chelsea, AL 35043-8211
Telephone:  (205) 678-8000
Facsimile:  (205) 678-0000

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this **14th** day of **January, 2008**, submitted the foregoing via the CM/ECF system, and that counsel for the plaintiffs are registered to receive a **Notice of Electronic Filing**, to wit:

Thomas Kirven Brantley Esq.
BRANTLEY & AMASON
401 North Foster Street
Dothan, Alabama 36303

James C. Pennington, Esq.
Joseph Musso, Esq.
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, PC
1819 5th Avenue North
One Federal Place, Suite 1000
Birmingham, Alabama 35203

Winn Faulk, Esq.
FAULK & REED
524 South Union Street
Montgomery, Alabama 36104

Jere Segrest, Esq.
James K. Walding, Esq.
Patrick Moody, Esq.
HARDWICK, HAUSE & SEGREST
Post Office Box 1469
Dothan, Alabama 36302-1469

   */s/ Katherine C. Hortberg*
       Of Counsel